Strafford,
No. 4365.

ROBERT E. HINCHEY, *Adm'r & a.*

*v.*

NATIONAL SURETY COMPANY *& a.*

Argued January 5, 1955.

Decided February 25, 1955.

374

376

*Burns, Calderwood & Bryant* (*Mr. Bryant* orally), for the plaintiffs.

*Devine & Millimet* (*Mr. Millimet* orally), for the defendant company.

GOODNOW, J. The policy of insurance involved in this case was issued to O. E. Sellers, the owner of the vehicle and the person in whose name it was registered, at his residence in Johnstown, Pennsylvania. The application for the policy, signed by the agent in Johnstown through whom it was procured, recited that the driver of the car other than the named insured was to be his son,

Donald, and stated that the vehicle was "to be used at Johnstown." The policy applied to accidents occurring outside the state of Pennsylvania as well as in that state. Even if it were findable, as contended by the plaintiffs, that the agent "probably knew" that the car was to be used primarily by Donald in the state of New York, the fact remains that the policy was issued in Pennsylvania and "even performance there, at least in some measure, was contemplated by it." *Maryland Casualty Co.* v. *Martin,* 88 N. H. 346, 348. The liabilities of the company arising out of the contract are to be governed by the law of Pennsylvania, where the policy was issued. *Boisvert* v. *Boisvert,* 94 N. H. 357, 358; 12 Appleman, Insurance Law and Practice, s. 7079.

One of the company's obligations under the terms of the policy was to furnish coverage with respect to bodily injury liability to the named insured and also to "any person while using the automobile and any person . . . legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." The company's obligation was thus limited to those cases in which "the actual use of the automobile is by the named insured or with his permission." While the acts on the part of Donald Sellers, which it is claimed brought O'Rourke within the coverage of the policy, occurred in the state of New York, the law of that state is not applicable in determining the rights and obligations of the company under this provision. Its substantive rights under a policy issued in Pennsylvania cannot be affected by the laws of New York in the absence of an agreement that they should be. *Boisvert* v. *Boisvert, supra,* 359.

The principal issue in this action is whether "the actual use of the automobile" at the time of the accident was "with [the insured's] permission" within the interpretation put upon that language by the laws of Pennsylvania. The automobile had been turned over by the insured to his son "for Donald to . . . use for all purposes as though it were his own." Under this broad authority, Donald had the right to allow others to drive it and anyone driving with Donald's permission was also driving with the permission of his father, the named insured. *Odden* v. *Union Indemnity Co.,* 156 Wash. 10. The issue is therefore to be determined on the basis of whether the actual use was with Donald's permission.

The Trial Court found that when Petell asked for the use of the car on September 6, 1951, in order to go to the fair at Syracuse,

he was informed by Donald that "he would not lend him the car if O'Rourke was going with him"; that when Venturini later brought a note to Donald from Petell in which the loan of the car was requested, Donald again refused when told by Venturini that O'Rourke was going; and that it was only when he was thereafter informed by Venturini that O'Rourke was not going but that another man named Tempo would go in O'Rourke's place that Donald gave the keys to Venturini to give to Petell "thereby giving permission to Petell to take the car accompanied by Venturini and Tempo." After receiving this permission, Petell, Venturini and O'Rourke left the base in Donald's car, Donald being unaware that O'Rourke instead of Tempo was one of the passengers. These findings of fact are unquestionably warranted by the evidence.

It is the law of Pennsylvania that while slight and inconsequential deviations from the permitted use will not annul the coverage provided by an omnibus clause similar to or like the one involved here, there is an absence of "permission" within the meaning of the policy if the car is being used "at a time or place or for a purpose not authorized by the insured." *Laroche* v. *Insurance Co.*, 335 Pa. 478, 482; *Freshkorn* v. *Marietta*, 345 Pa. 416. Coverage is not afforded simply on the basis that permission was granted to take and use the car in the first instance. Its use at the time of the casualty must be one which was contemplated when permission was granted. When consent is required not merely for the "use" but for the "actual use," as in this case, coverage is dependent upon the existence of permission for the "particular use" at the time of the accident. The permission must "cover the specific purpose for which the car is being driven." *Laroche* v. *Insurance Co.*, *supra*, 483.

When the accident occurred, the car was being driven at a time and place which Sellers had authorized. In granting permission to Petell to take the car, however, Sellers had not only limited the passengers to Venturini and Tempo but had specifically excluded O'Rourke. The use for which permission was granted to Petell was not simply taking the car to the fair, but the transportation of himself, Venturini, and Tempo to the fair provided O'Rourke was not also transported. It was not contemplated by Sellers that O'Rourke would be a passenger, much less that he would be the driver. The particular use to which the car was being put, insofar as it was being driven by O'Rourke and used for his transportation,

was neither actually nor impliedly within the limits of the permission granted by Sellers to Petell. Unlike the situation in *Arcara* v. *Moresse*, 258 N. Y. 211, where the thing forbidden related to the operation of the vehicle, the limitation upon the permission given in this case was that the car should not be used at all if O'Rourke was a passenger. Similarly in *Glens Falls Indemnity Co.* v. *Zurn*, 87 F. (2d) 988, also relied on by the plaintiffs, the insured consented to the use of the car for the transportation of his son and his friends and the question of permission was concerned with the operation of it by one of the son's friends.

The plaintiffs contend, however, that even if the use of the car fell without the limits of the permission given to Petell, the operation of the car by O'Rourke at the time of the accident had been impliedly permitted by Sellers. It cannot be doubted that permission "may result by implication from . . . a course of conduct in which the parties have mutually acquiesced." *Conrad* v. *Duffin*, 158 Pa. Super. 305, 309; *Brower* v. *Employer's Liability Assurance Co.*, 318 Pa. 440. The plaintiffs argue that such a permission existed in this case because O'Rourke had implied permission to go in the car as a passenger whenever it was loaned to others; and because "Donald approved the custom of swapping drivers" whenever the car was loaned and thereby impliedly consented to the operation of the car by anyone, including O'Rourke, who might be a passenger in it.

Whether there had been such a common practice on the part of Sellers as would support a finding that O'Rourke was impliedly permitted by him to go in the car as a passenger on this trip (see *Powers* v. *Wells*, 115 Pa. Super. 549), as to which we express no opinion, it is apparent that the plaintiffs' contention as to Sellers' consent to the exchange of drivers is contrary to the Court's findings on that subject. "There was testimony that on other trips in which several men had been in the car that they had been in the habit of changing around. Sellers testified that he did not condone this practice and never knew it, but the Court finds that the exchange of drivers was a normal and habitual use of the borrowed car." This was not a finding that Sellers approved the custom of swapping drivers. The Court denied the plaintiffs' request that it find "that Donald Sellers knew that when O'Rourke, or other persons, took the car that they took other men along with them, and that they swapped drivers during the trips," as well as three other requests concerned with Sellers' knowledge of the swapping

of driving. The denial of these requests would not amount to a specific finding that Sellers did not know of the swapping (*Thistle* v. *Halstead,* 96 N. H. 192, 193) but when considered in conjunction with the findings made on the subject, it seems clear that by its recital of Sellers' testimony, the Court impliedly found that he "never knew" of the practice. Without such knowledge on the part of Sellers, his consent to the exchange of drivers cannot be implied. O'Rourke had no permission to operate the car.

The plaintiffs' request that "there is a presumption that O'Rourke was operating the car with the permission of the owner at the time and place of the accident" was properly denied. The case of *Cherry* v. *Mitosky,* 353 Pa. 401, 408, cited by the plaintiffs, merely holds that in the absence of any evidence that the driver has exceeded the limits of his permission, there is a presumption that he was "acting rightfully rather than wrongfully," and is not applicable in this case.

The accident happened on September 7, 1951. The defendant company was seasonably informed of it and its investigators took statements from various witnesses in the four months following its occurrence. In March, 1952, a claim was made by a Vermont attorney for damages for the death of Petell and on March 10, 1952, the company replied from its Albany, New York, office as follows: "This is to inform you that we have completed our investigation into the above matter and that your client's claim has been given our careful consideration. Since the result of this investigation indicates that responsibility for the accident does not rest with our insured we regret that we must respectfully decline to make any payment." Thereafter present counsel for the plaintiffs wrote to the company in May and June, 1952. In reply, the company referred to its letter of March 10, 1952, to the Vermont attorney, stating that it there set forth its position with reference to these cases. Suits against O'Rourke to recover for the death of Venturini and Petell were commenced on July 18, 1952. In each case, O'Rourke appeared *pro se* and the company entered a special appearance.

Before the Trial Court, the plaintiffs claimed that the company's letter of March 10, 1952, confirmed in June, 1952, merely denied liability for the accident but did not deny insurance coverage and that by not then disclaiming coverage, the company, as to the plaintiffs, waived its right to now do so. The Court properly denied the request of the plaintiffs that the company be found to

have waived its right to deny coverage. Even if the letter be considered as assigning nonliability as the company's sole reason for refusing to pay, as claimed by the plaintiffs, that did not, under the law of Pennsylvania, constitute a waiver by the company of its claim of noncoverage as an additional reason. Noncoverage was obviously not a reason "which could have been remedied or obviated" by the plaintiffs had they known of it. *Slater* v. *General Casualty Co.*, 344 Pa. 410, 416.

Claims were advanced in this court that the company also waived its right to deny coverage because it failed to so inform O'Rourke until more than ten months after the accident and that the company is estopped from claiming that no coverage exists. Neither of these claims were raised at the trial. The issue of waiver was not pleaded by the plaintiffs and when raised by them during the trial was the subject of considerable discussion. The claim then advanced was that the defendant had failed to disclaim coverage to the plaintiffs, not to O'Rourke. The Court specifically inquired of plaintiffs' counsel: "Do I understand . . . your claim is by not disclaiming coverage to your client or to you as counsel for the plaintiff that that constitutes a waiver?" To this inquiry, counsel replied: "Yes . . . under the law as we understand it." It was this claim as to waiver that the Presiding Justice was called upon to consider. None other was stated. A ground of recovery not presented at the trial will not be considered here. *Fitch Company* v. *Insurance Company*, 99 N. H. 1; *Duval* v. *Company*, 82 N. H. 543, 545.

The defendant company is not obligated, under its policy issued to O. E. Sellers, to provide coverage for the defendant O'Rourke nor to pay any claims or defend any action against him or Petell arising out of the accident of September 7, 1951.

After the Court's findings of fact had been made, the plaintiffs filed a motion for voluntary nonsuit. "After verdict there can be no nonsuit." *Ingalls* v. *Railroad*, 83 N. H. 397. The denial of this motion as a matter of law was proper. In making its findings of fact, the Court took the place of the jury. As to the facts, its findings constitute the verdict. The questions transferred to this court by the Trial Court were ones of law only. As to the facts, the plaintiffs have had all the trial of their suit to which they are entitled. They cannot avoid the results of an action which they themselves started and prosecuted, by now becoming nonsuit. The cases relied on by them in which the plaintiffs were permitted

to take a nonsuit after the verdict was set aside (*Simpson* v. *Gafney*, 66 N. H. 477) and after the case had been reopened by Court order for further evidence (*Saykaly* v. *Manchester*, 97 N. H. 4), are not in point. In neither case was a verdict in existence when the nonsuit was allowed.

Nor does the action of the plaintiffs in filing motions for voluntary nonsuits in the civil actions brought by them against O'Rourke affect this result. The commencement of this action was not dependent upon them. Without them, the company's claim of noncoverage is still "sufficiently definite to constitute a genuine threat or prejudice to the plaintiff's interest" to support the present action to its conclusion. *Merchants Mutual &c. Co.* v. *Kennett*, 90 N. H. 253, 255.

*Remanded.*

All concurred.