Hillsborough,
No. 5265.

MARYLAND CASUALTY COMPANY

*v.*

JAMES J. COMAN & *a.*

Argued March 2, 1965.
Decided July 21, 1965.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the plaintiff.

*McLaughlin, Berrigan & Whelton* for the defendant Coman.

*Devine, Millimet, McDonough, Stahl & Branch* and *David A. Brock* (*Mr. Brock* orally), for the defendant Flaherty.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Richard C. Kohls* for the defendant Walsh.

*Broderick, Craig & Bourque* (*Mr. William H. Craig* orally), for the defendant Migliozzi.

DUNCAN, J. Since the policy in question in this case was issued in New Jersey, the rights and obligations of the parties arising out of it are governed by the law of New Jersey. *Boisvert* v. *Boisvert*, 94 N. H. 357, 358; *Hinchey* v. *Surety Company*, 99 N. H. 373. The condition of the policy alleged to have been violated by the insured provided in part as follows: "The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance."

Under the law of New Jersey, as well as that of other jurisdictions, the duty to cooperate with the insurer under such a provision is held to require a full, frank and fair disclosure of information in the possession of an insured. Annot. 34 A.L.R. 2d 264, 265.

The instant proceedings arise out of the following events: The insured and his five passengers were students at St. Anselm's College in Manchester. When the accident occurred, at about 1:50 A. M. on December 14, 1961, they were returning to Manchester from a basketball game at Worcester, Massachusetts. After leaving Worcester, they had made several stops for food and beer, but there was no evidence that any of them was affected by the beer. Most of them however had been up late the previous night studying for examinations given before the Christmas holiday which was to commence on December 14. As they were proceeding at a moderate speed through falling snow in Amherst, New Hampshire, Coman dozed, lost control of the vehicle, and it struck a pole near the highway. All of the occupants of the car were injured, the defendants Migliozzi and Flaherty most seriously.

Prior to the basketball game, the students had been warned by college authorities that any breach of school disciplinary rules would result in expulsion. When the accident occurred, Coman and his friends were aware that the dean of men was traveling behind them with buses from the college, and they were apprehensive that discovery of their consumption of beer followed by the accident would result in their expulsion from the college. Two of the passengers went to summon aid and first advanced the explanation that the vehicle had been forced off the road by an oncoming car. Upon arrival of the college buses, all of the boys were taken to the Nashua Hospital. While glass was being removed from Coman's face at the hospital, he was told by one of his companions that the same statement had been made at the hospital to a state trooper, and Coman, believing that his "education hung in the brink," adopted it as his own version of the accident, in the hope of preserving his standing at the college.

During the Christmas holidays Coman was interviewed in New Jersey by a representative of the insurer. The interview took place in the presence of Coman's father, the named insured, who was chief of police in Rahway, and Coman repeated his earlier statement that the car had been forced off the road.

In May 1962, a Manchester representative of the insurer visited

the college, after having learned on May 10 from counsel for the defendant Flaherty that the original statements given by the boys were not correct. As a result of this interview, Coman and other occupants of the car gave new statements on May 23 admitting that the previous statements had been incorrect, and relating how the accident actually occurred. Thereafter Coman offered his assistance to the Manchester representative on more than one occasion.

No actions were brought until this petition was filed by the insurer in October 1962. Thereafter actions at law were brought by three of the passengers, the claims of the two others having been settled.

The issue presented by several of plaintiff's exceptions is whether the conduct of the insured must be said as a matter of law to have constituted a breach of the cooperation clause of the policy. The law of New Jersey with respect to this question, as enunciated in decisions in that jurisdiction since the establishment of its present court system in 1947, is found in the decisions of the Appellate Division of the Superior Court. Those decisions establish that the making of untrue statements by the insured to his insurer will constitute a breach of the cooperation clause, if the clause is "deliberately breached in a *material* or *essential* particular." *Pearl Assur. Co. Ltd.* v. *Watts*, 58 N. J. Super. 483, 490. See also, *Sutera* v. *Provident Ins. Co. of N. Y.*, 67 N. J. Super. 554; *Pearl Assur. Co. Ltd.* v. *Watts*, 69 N. J. Super. 198; *Glens Falls &c. Co.* v. *Keliher*, 88 N. H. 253, 261.

Here it is not disputed that Coman originally gave a false statement to the plaintiff insurer, and that he knew it to be false when he gave it. The Trial Court so instructed the jury. The plaintiff argues that since the statement pertained to a material matter viz., the cause of the accident, it follows as a matter of law that there was a breach of the condition.

We do not so read the New Jersey cases. While the statement was intentionally made, the making of it was not necessarily a "deliberate breach" of the policy within the requirements of the New Jersey cases. The jury could find from the testimony of James Coman that he was prompted to misstate the facts through considerations having no relation to insurance, and without collusion or purpose to defraud or obstruct the company. See *Pearl Assur. Co. Ltd.* v. *Watts, supra*, 58 N. J. Super. 483, 490; *American Sur. Co.* v. *Diamond*, 1 N. Y. 2d 594, 599. In the circumstances, his conduct would not necessarily require a finding of

deliberate failure to "assist in . . . securing and giving evidence . . . and in the conduct of any legal proceedings" as required by the cooperation clause.

In the most recent decision of the Appellate Division of the Superior Court of New Jersey brought to our attention, the court said: "Even though an insured may have given his insurance carrier an untrue statement of the accident, no breach of the cooperation clause results if the untrue statement is promptly and seasonably corrected . . . While the insurance carrier is not required to show prejudice in establishing a breach of the co-operation clause, *Pearl Assur. Co. Ltd.* v. *Watts,* 58 N. J. Super., *supra,* at *p.* 491, absence of prejudice to the carrier may be a factor in determining whether or not a misstatement was season-ably withdrawn or corrected." *Mariani* v. *Bender,* 85 N. J. Super. 490, 501, *certif. den.,* 44 N. J. 409.

Although the false statement in this case was not retracted as promptly as in the *Mariani* case, the correction was made within six months and before any litigation. Moreover the circumstances surrounding the accident were not such as to suggest that the insurer could prudently or reasonably rely blindly upon the explanations of the accident given by the occupants of the insured vehicle.

On the record of the trial, we are of the opinion that there was an issue of fact for the jury (*Mariani* v. *Bender, supra,* 500) and that the jury could properly find that there was no deliberate violation of the cooperation clause under the New Jersey law. *Pearl Assur. Co. Ltd.* v. *Watts,* 69 N. J. Super. 198, *supra.*

The plaintiff contends that in any event a new trial should be granted because of erroneous rulings to which it excepted at the trial. Counsel for one of the defendants was permitted to intro-duce evidence tending to show that the plaintiff suffered no prej-udice as a result of the false statements first given to it by Coman. After the plaintiff also had been permitted to introduce testimony to the contrary, the Trial Court excluded further evidence upon the subject, and the jury was later instructed that "there is no requirement that the insurance company show evidence of prej-udice as a result of the non-cooperation." In view of the rule announced by the *Mariani* case *supra* that the absence of prejudice may be a factor in determining whether a misstatement was sea-sonably corrected, we conclude that there was no error which was prejudicial to the plaintiff.

In the course of discussion of the admissibility of such evidence,

counsel for one of the passengers offered to agree not to use the misstatements at the trial of the tort actions, and repeated his assertion in the presence of the jury. The plaintiff's motion for mistrial was denied subject to its exception, and the jury was instructed to disregard the comments of counsel. A subsequent motion to set aside the verdict because the jury was influenced by "prejudice," among other grounds, was also denied. We see no occasion to disturb these rulings of the Trial Court. *Hoyt* v. *Horst*, 105 N. H. 380, 388-389.

The plaintiff excepted to an instruction to the jury that under New Jersey law "policies of insurance will be liberally construed" and that conditions which would create a forfeiture will be construed against the company and not "be extended beyond the strict words of the policy." This instruction is supported by holdings of New Jersey's highest appellate court and the plaintiff's exception is overruled. *Allen* v. *Metropolitan Life Ins. Co.* (N. J.), 208 A. 2d 638, 644, and cases cited.

The plaintiff requested an instruction that an insured is required to "make a fair, frank and truthful disclosure of any information he has concerning an accident." By inadvertence this instruction was not incorporated in the charge. While it could properly have been given, we are not persuaded that its omission was fatal. The jury was well aware that the first statement given by the insured was false, and no contention was made that his correction of it was not frank or truthful. With respect to the issues to be decided by the jury the charge was full and correct without the incorporation of a general principle which was not in issue.

*Exceptions overruled.*

BLANDIN, J., dissented; the others concurred.

BLANDIN, J., *dissenting*: In this case the insured made a deliberate false statement of a material and essential fact to the insurer. He persisted in his falsehood for six months because as he testified, he feared the consequences if his father and the authorities of the college which he attended learned the truth. The applicable New Jersey law holds that "whatever the assured's motivation" for his deliberate false statements is immaterial. *Sutera* v. *Provident Ins. Co. of N. Y.*, 67 N. J. Super. 554, 562.

Indisputably the policy is avoided unless the untrue statements are "promptly and seasonably corrected." *Mariani* v. *Bender,* 85 N. J. Super. 490, 501; see also, *Sutera* v. *Provident Ins. Co. of N. Y., supra.*

The *Mariani* case, which is the basis of the majority opinion, held that it was an issue of fact for the jury whether a correction of an untrue statement made by an assured within a bare three weeks was "promptly and seasonably" made. I cannot believe that this decision is any authority for holding that an assured, who persisted in a deliberate false statement for six months and finally confessed to the truth under pressure, might be found to have "promptly and seasonably" corrected his untrue statement. I would therefore order judgment for the plaintiff as a matter of law.