STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Plaintiff-Appellee, *v.* ALLSTATE INSURANCE CO., Defendant-Appellee—(DANIEL C. OSMON, Defendant-Appellant.)

(No. 56916; ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮—May 20, 1974.

Herbert F. Stride, of Chicago (William J. Harte, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland, D. Kendall Griffith, and Thomas M. Hamilton, Jr., of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant, Daniel C. Osmon, appeals from a summary judgment granted to the plaintiff, State Farm Mutual Automobile Insurance Company, and to Allstate Insurance Company, another defendant, in an action for declaratory judgment to determine the respective rights and obligations of the companies under their respective policies of insurance. He contends that there was a valid and substantial factual dispute as to whether either or both of the companies were required to extend coverage to the defendant driver in a personal injury suit for damages sustained by the defendant, Osmon, as a result of an automobile collision. He urges that the trial court ruled improperly when it determined that neither Allstate, which insured the owner of the vehicle, which was being driven by one J. F. Richter, nor State Farm, which insured the defendant Richter's father, was obligated to extend coverage to the defendant, Richter.

This dispute arises out of an automobile accident, which occurred on February 15, 1969, in which a vehicle owned by Mrs. Frances Konenski and driven by John F. Richter allegedly struck the defendant in this action, Daniel Osmon. With Richter in the vehicle at the time of the

accident were two of Mrs. Konenski's daughters, Judy, age 14, and Laurie, age 7. When the incident occurred Richter, Mrs. Konenski's daughters and two friends were driving around, waiting for Mrs. Konenski's other daughter, Sheryn, age 17, to finish work. Sheryn Konenski was John Richter's girlfriend, and she had been going out with him for approximately 1½ years at the time of the accident. After the collision, Daniel Osmon filed suit for personal injuries in the circuit court of Cook County against Richter, Mrs. Konenski, and Judy Konenski. Subsequently State Farm instituted this action for declaratory judgment after Allstate Insurance had refused to defend or extend coverage to Richter on the ground that he was not a permitted user of the vehicle within the terms of Allstates' policy of automotive insurance. State Farm, which had issued an automotive liability policy to Richter's father, similar to the Allstate policy in question (which would provide excess coverage), contended that if Richter was not a permitted user, then the State Farm policy also was not applicable. After considering the affidavits and briefs submitted by the respective parties, the trial judge concluded that there was no factual basis to support a conclusion that John Richter was a permitted user of the Konenski vehicle. We affirm that conclusion and the judgment.

In reaching his determination that John Richter was driving the Konenski car without permission, the trial judge considered the following facts. John Richter had been Sheryn Konenski's boyfriend for about 1½ years at the time of the accident. None of the Konenski girls was ever permitted to use the car, and none of them had a driver's license or permit. On several occasions, when John and Sheryn were first dating, Mrs. Konenski had permitted John Richter, who had a permit, to drive the vehicle in her presence. However, for several months prior to the night before the accident, John Richter had not been welcome in the Konenski home. On the night before the accident Mrs. Konenski had allowed John Richter to stay at her apartment because he had left home. On one occasion, when Mrs. Konenski was still on good terms with Richter, she had given him permission to bring her car home from the gas station where it was being repaired, without being present in the vehicle. On two occasions Sheryn and John had also taken the vehicle without permission, and when Mrs. Konenski found out about one of these rides, she had become quite angry with Richter.

On the day of the accident, Mrs. Konenski had asked Richter to drive her to a doctor's appointment and then to a meeting, as her hand was in a cast. She then asked him to return the car directly to her apartment. Richter returned the car, but not directly, at about 1 P.M. He then returned later that same afternoon, after Mrs. Konenski had gone to

work, and asked Judy Konenski, who was baby-sitting for her sister Laurie, if she would like to go for a ride, while he waited for Sheryn. He asked her to get the keys from her mother's room, which she did. Judy took Laurie with her, and then she and Richter proceeded to pick up two of their mutual acquaintances, whom they took for a ride, while waiting for Sheryn to accompany them to a drive-in movie. It was during this time that the accident occurred. John Richter left the scene of the accident without waiting for the police and, when questioned by Mrs. Konenski about the damage to her car, he told her that he had hit a dog, and paid her to have it repaired so that she would not call the police.

■■ The defendant Osmon contends that there are two ways in which John Richter could be considered an authorized user of the Konenski vehicle, under the tests outlined in the landmark case of *Hays v. Country Mutual Insurance Co.* (1963), 28 Ill.2d 601, 192 N.E.2d 855, where our supreme court stated at 608-609 that:

> "Of course the named insured may by express authorization delegate to his permittee the power to grant permission to others, and circumstances surrounding the original permission may support an implication of such an authorization. Thus where the permittee is in every practical sense the owner of the car, and the named insured holds title for convenience, the general custody and control of the permittee is usually held to empower him to grant permission to others within the scope of an omnibus clause, at least in the absence of express prohibition. (See, e.g., *Hinckley v. National Surety Co.*, 99 N.H. 373, 111 A.2d 827 (1955); *Fireman's Fund Indemnity Co. v. Freeport Insurance Co.* 30 Ill.App.2d 69; *cf. Norris v. Pacific Indemnity Co.* 39 Cal.2d 420, 247 P.2d 1 (1952).) If the original permittee retains control of the car, but turns over its physical operation to a third person while remaining a passenger, an implied permission has been found in the continued use and control of the original permittee. (See *Standard Accident Insurance Co. v. New Amsterdam Casualty Co.* 249 F.2d 847 (7th cir. 1957); *Fireman's Fund Indemnity Co. v. Freeport Insurance Co.* 30 Ill.App.2d 69.) Even where the original permittee is not a passenger, an inference of permission has been sustained where the third person is engaged on some errand or activity for the benefit, advantage, or purposes of the original permittee. (See *Aetna Life Insurance Co. v. Chandler*, 89 N.H. 95, 193 Atl. 233 (1937).) A course of conduct, establishing that the original permittee was allowing third persons to drive with the knowledge of the named insured and without his objection, may also support a finding of implied permission. See, e.g., *Odden v.*

*Union Indemnity Co.* 156 Wash. 10, 286 Pac. 59 (1930); *Shoup v. Clemans,* (Ohio App.), 31 N.E.2d 103 (1939); *cf. Goff v. New Amsterdam Casualty Co.* 318 Ill.App. 586."

It is argued that Richter was a permitted user because he received the keys of the vehicle from July Konenski, who had been given control of them by her mother, and that Judy and Laurie were present in the car, and therefore were, in effect, using the vehicle in question. We disagree, because the keys to the vehicle were not left in the control of Judy Konenski, aged 14 years, who was never allowed to drive the car and had no permit to do so. Mrs. Konenski did not leave the keys to the vehicle in Judy's control, and she and her sister could not in any sense be considered to be using the car, since they were too young to drive and were merely accompanying John Richter at his request.

■■ The recent decision of our Supreme Court in *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill.2d 333, 341-342, 297 N.E.2d 163, discussed the issue of implied permission, and concluded that it was necessary for the owner of the vehicle initially to hand over the keys of the vehicle before permission can be inferred.

> "Illinois has long followed the rule that if the named insured has initially given permission to another to use the insured vehicle, a deviation from the authorized use does not serve to terminate the permission. As stated in *Konrad v. Hartford Accident & Indemnity Co.* 11 Ill.App.2d 503, 'When the named insured has initially once given permission to another person to use his motor vehicle but that person deviates from the permission granted, Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with 'permission,' under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; *the only essential thing is that permission be given in the first instance;* the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use  *  *  *.' 11 Ill.App.2d 503, at 514-5." (Emphasis ours.)

Mrs. Konenski told Richter to return the car directly early that afternoon. This was done, and his permission terminated. He did not request the use of the vehicle again. And since Judy Konenski did not have control of the keys to the automobile, John Richter did not have implied permission from Mrs. Konenski to use the vehicle.

■■ Nor are we impressed with the argument that a benefit was conferred on Mrs. Konenski, because Judy Konenski took her sister with her on the ride, because she was too young to be left alone in the apartment. There was no need to use the automobile to confer this benefit. Judy was supposed to be caring for her sister at home, not taking her out for an unauthorized ride. There is no benefit to a mother to have her daughter out riding with an unlicensed driver and involved in a hit-and-run accident, and this contention is without merit.

Similarly, with respect to defendant Osmon's discussions of negligence with respect to Mrs. Konenski and her daughter Judy, we see no relevance with respect to the issue raised on this appeal, *i.e.*, whether John Richter was a permitted user of the Konenski vehicle. Allstate has not refused to defend or extend coverage to the Konenski's and thus the terms of the amended complaint, as it relates to those defendants in the personal injury suit are not relevant to the issue presented in this appeal, as their negligence does not make Richter a permitted driver under the terms of the Allstate policy.

Finally the defendant contends that John Richter is covered by the fifth (omnibus) provision of the Allstate policy. The relevant sections of that policy read:

"The following persons are insured under this Part

1. The named insured with respect to the owned or a non-owned automobile;

2. Any resident of the named insureds' household with respect to the owned automobile;

3. Any other person with respect to the owned automobile, provided the actual use thereof is with the permission of the named insured;

4. Any relative with respect to a non-owned private passenger automobile or trailer not regularly furnished for use of such relative; and

5. Any other person or organization with respect to any automobile or trailer, provided:

    (a) *the actual use is by a person who is an insured under any of the four preceding paragraphs, with respect to such automobile or trailer, and*

(b) such other person or organization is legally responsible for the use and, except with respect to a temporary substitute automobile, does not own or hire the automobile or trailer.

The insurance afforded under this Part 1 applies separately to each insured against whom claim is made or suit is brought, but the inclusion of more than one insured shall not operate to increase the limits of Allstate's liability." (Emphasis ours.)

It is plain from the language of the policy that the user must come within one of the first four categories of the policy before the fifth (omnibus) clause may even be considered and, as we have already held, since John Richter was not a permitted user, the omnibus provisions provided no coverage.

We therefore affirm the judgment.

Judgment affirmed.

BURKE and GOLDBERG, JJ., concur.