Hillsborough
No. 7757

MARIA VIGNEAULT

v.

THE TRAVELERS INSURANCE COMPANY
AND
NATIONAL GRANGE INSURANCE COMPANY

February 3, 1978

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*James S. Yakovakis* orally), for the plaintiff.

*Brown & Nixon,* of Manchester (*Vincent F. Dooley* orally), for The Travelers Insurance Company.

*Wiggin & Nourie,* of Manchester (*Gordon A. Rehnborg, Jr.* orally), for National Grange Insurance Company.

DOUGLAS, J. The issue in this uninsured motorist case is whether the language of General Notice G-642 of the Massachusetts Automobile Rating and Accident Prevention Bureau (issued June 27, 1973) automatically increases the extraterritorial liability coverage of a Massachusetts driver to levels required by the New Hampshire Financial Responsibility Act, RSA ch. 268, *as amended,* (Supp. 1975). We hold that it does not.

The plaintiff, a New Hampshire resident, was injured in New Hampshire when the automobile in which she was riding collided with another driven by Kenneth Larson, a resident of Massachusetts. Defendant National Grange Insurance Company had issued a policy on the car in which plaintiff was riding. The policy contained uninsured motorist protection of $20,000 per person/$40,000 per occurrence, on which National Grange admits liability to the extent that the plaintiff cannot collect her damages from Larson's insurer, Travelers Insurance Company. *See American Mut. Ins. Co. v. Commercial Union Ins. Co.,* 116 N.H. 210, 357 A.2d 873

(1976). Larson's policy was issued in Massachusetts. It contained extraterritorial coverage of $5,000/$10,000 and incorporated the language of General Notice G-642:

> If under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a nonresident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.

According to the agreed statement of facts submitted to the Court (*Loughlin,* J.), the plaintiff's damages exceed the $5,000 coverage in Larson's policy. The court found that the quoted language did not increase that amount to the $20,000 provided in RSA 268:19 and that National Grange was liable "to a maximum of the limits of the New Hampshire Financial Responsibility Law. . . ." The case has been transferred here. We affirm the judgment on the effect of the Larson policy language, but vacate that part that defines the maximum payment that National Grange must make.

■ We believe that the court below focused on the correct language in the quoted provision when adjudicating the effect of the General Notice. By its terms the language of the General Notice raises the liability coverage only when a nonresident is required to maintain insurance. Although a nonresident must comply with this State's financial responsibility laws if he wishes to operate a motor vehicle here, RSA 268:14, those laws mandate compulsory insurance only for drivers who have committed specified offenses, RSA 268:3, or who have been involved in an accident, RSA 268:5 I. Prior to the occurrence that generated this litigation, Larson

was involved in no accident or breach of law that would have required him to maintain insurance. Such insurance as he now must carry acts prospectively only, RSA 268:20; therefore, the language of the General Notice, on its face, does not raise the policy's liability limits.

■■ Defendant National Grange, the sole proponent of the contrary result before this court, argues that the General Notice is sufficiently ambiguous so that we should interpret the Travelers policy most favorably to the insured and allow her to recover. Under Massachusetts law, which governs the interpretation of this policy, *Maryland Cas. Co. v. Coman*, 106 N.H. 364, 365, 212 A.2d 703, 704 (1965); *Hinchey v. Surety Co.*, 99 N.H. 373, 377, 111 A.2d 827, 830 (1955), when "language permits more than one rational interpretation, that most favorable to the insured is to be taken." *Palmer v. Pawtucket Mut. Ins. Co.*, 352 Mass. 304, 306, 225 N.E.2d 331, 333 (1967); *accord, Morin v. Massachusetts Blue Cross Inc.*, 365 Mass. 379, 390, 311 N.E.2d 914, 920 (1974). Although the language of the General Notice that is incorporated in the policy itself does not admit of more than one rational interpretation, National Grange points to other language contained in the General Notice:

> In the event that evidence of financial responsibility is required because of a motor vehicle accident, the policy shall be construed to have the necessary limits of the state involved and no charge shall be made for any filing required.
>
> In the event that a filing for the future must be made (e.g. driving under the influence), the policy shall be construed as to affording the required limits but a charge shall be made for increasing the limits as has been done in the past.

National Grange argues that the first paragraph increases coverage retroactively whenever a filing of proof of financial responsibility is required following an accident, despite the otherwise unambiguous language of the General Notice. It buttresses that argument by alluding to the distinction made between filing for a past accident and filing for the future because of an illegal action. That distinction is reflected in the New Hampshire statute. *Compare* RSA 268:5 I *with* RSA 268:3. The Travelers policy, however, incorporates only that part of the General Notice quoted

earlier. Thus it provides an automatic increase when a nonresident is required to maintain insurance. By a separate term, the policy also provides increased coverage when it is certified to prove future financial responsibility, but the insured must reimburse the company for any payments made because of certification. This additional term is inconsistent with the first additional paragraph of the General Notice, upon which National Grange relies, and negates that paragraph by implication. Furthermore, the parties have supplied no evidence that this policy has been certified according to its provision; thus its coverage has not been increased. Finally, no evidence has been produced that the language of the General Notice has the force of a statute, which would affect the terms of the policy beyond the actual contract. Rather, the General Notice seems to be a promulgation of a private group to which the insurer is more or less voluntarily bound. Hence we are left with no inconsistency that calls for interpretation in favor of the insured. Under the terms of the Travelers policy, therefore, the plaintiff can receive only $5,000.

■ The court below, without explanation, held that the plaintiff could recover from National Grange her damages "to a maximum of the limits of the New Hampshire Financial Responsibility Act" minus the sum collected from Larson's liability coverage, for a total of $15,000. The plaintiff argues that since her damages are in excess of $25,000, she should be allowed to receive the full statutory uninsured motorist coverage of $20,000 in addition to the $5,000 from Travelers. We disagree with both these formulae because they focus on the wrong element as an upper limit of recovery. Although the result in this case remains unaffected, the trial court, rather than looking to the statutory minimum amount of insurance, should consider the amount of uninsured motorist coverage purchased to determine maximum reimbursement. We hold that once an insurer becomes liable on its uninsured motorist coverage, the insured will receive the difference between the amount of his damages or the coverage, whichever is the lesser, and the tort-feasor's liability coverage, if any.

When uninsured motorist coverage was first introduced, the insurers attempted to restrict the risk to motorists who maintained no liability coverage. *See* Widiss, The Slow Evolution of a New Automobile Coverage, Trial Magazine, September 1977, at 46. The New Hampshire statute specifically rejected that restricted definition. Instead the legislature provided that a motorist was uninsured

"if and to the extent that . . . the limits of liability carried . . . are lower than the minimum limits applicable to motor vehicle liability insurance policies issued pursuant to the laws of New Hampshire." RSA 268:15-a V (Supp. 1975). Our cases have consistently applied that definition. *E.g., American Mut. Ins. Co. v. Commercial Union Ins. Co.,* 116 N.H. 210, 357 A.2d 873 (1976); *Carrignan v. Allstate Ins. Co.,* 108 N.H. 131, 229 A.2d 179 (1962). Those cases have awarded the victim the difference between the statutory minimum coverage and the tort-feasor's liability insurance. As explained in *American Mutual:*

> [A] victim of an accident having uninsured motorist coverage in the minimum amount prescribed by statute would recover his damages by a combination of payment received from an insured tort-feasor supplemented by the uninsured motor carrier up to the limits of the coverage required by the financial responsibility act, or from the uninsured motorist carrier alone if no funds are available from the tort-feasor . . . . [A]n insured having uninsured motorist protection would receive the coverage he could reasonably expect under the provisions of RSA 268:15-a (Supp. 1975) and which the legislature intended he should receive.

116 N.H. at 215, 357 A.2d at 877 (citations omitted.)

In all these cases, the insured had purchased only the minimum amount of uninsured motorist coverage. Yet the legislature has provided that an insured may purchase coverage up to the limits of his liability protection. RSA 268:15-a I (Supp. 1975). When an insured purchases additional coverage, he reasonably expects to be protected against uninsured motorists up to the amount for which he paid. Since the legislature created an option for additional coverage, it intended that those choosing to buy increased protection should receive its benefits. *See Kirkley v. State Farm Mut. Ins. Co.,* 17 Cal. App. 3d 1078, 1082, 95 Cal. Rptr. 427, 429 (1971); 1969 J. of the Sen. 1199 (remarks of Sen. Armstrong). Thus, once a victim is injured by a motorist who falls within the definition of an uninsured motorist, the proper figure to which one should look to determine maximum recovery is the amount of coverage purchased. To the extent that this case is inconsistent with those cases which limited recovery without considering the availability of additional coverage, *Maryland Cas. Co. v. Howe,* 106 N.H.

422, 213 A.2d 420 (1965); *American Mut. Ins. Co. v. Commercial Union Ins. Co.*, 116 N.H. 210, 357 A.2d 873 (1976); *Maryland Cas. Co. v. Coman*, 106 N.H. 364, 212 A.2d 703 (1965), they are overruled.

Larson's coverage remains at the $5,000 policy limit. The plaintiff here has only $20,000 uninsured motorist protection. That figure defines the upper limit of her recovery. The result below is affirmed for the reasons stated in this opinion.

*Affirmed.*

LAMPRON, J., did not participate in the decision of this case; the others concurred.