Rockingham,
No. 6231.

RONALD A. RAITT

*v.*

NATIONAL GRANGE MUTUAL INSURANCE COMPANY.

December 30, 1971.

*Shaines, Madrigan & McEachern* ( *Mr. Duncan A. McEachern* orally ) for the plaintiff.

*Calderwood & Ouellette* and *Stanley J. Mullaney* ( *Mr. Mullaney* orally ) for the defendant.

DUNCAN, J. On March 3, 1969 the plaintiff suffered personal injuries while a passenger in an uninsured motor vehicle which was in collision with an insured vehicle in Dinwiddie, Virginia. The plaintiff was the name insured in a policy of insurance issued to him by the defendant on May 1, 1968, which was effective on the date of the accident, and which provided uninsured motorist coverage as required by RSA 268:15-a as inserted by Laws 1967, ch. 284. With the consent of his insurer obtained pursuant to certain provisions of the policy, the plaintiff negotiated a settlement with the Virginia motorist's insurer in the sum of $15,000,

which was the limit of coverage provided by the latter's policy. Relying upon provisions of its policy issued to the plaintiff, the defendant thereafter denied coverage upon the ground that the maximum limit of the plaintiff's policy is $10,000 and that the amount recovered from the insured motorist exceeded this amount, so that the plaintiff is "not entitled to receive anything from the defendant".

The plaintiff brings this petition for declaratory judgment to determine the rights of the parties. All questions of law presented were reserved and transferred by the Presiding Justice, *Perkins, J.*

By its policy issued to the plaintiff and in particular by an endorsement styled "Family Protection Coverage", the defendant undertook to "pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . . " Paragraph 6 of the "Conditions" of the endorsement provided that the limit of liability for such damages should be the limit stated in the policy, which was $10,000 for injury of any one person, as required by the statute in effect at that time. RSA 268:1 ( VII ). Paragraph 6 of the "Conditions" of the endorsement further provided in pertinent part, under the head of "Limits of Liability"

"( b ) any amount payable under the terms of this endorsement because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by ( 1 ) all sums paid on account of such bodily injury by or on behalf of ( i ) the owner or operator of the uninsured automobile and ( ii ) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the Bodily Injury Liability Coverage of the policy . . . . " Paragraph 9 of the "Conditions" also provided in part as follows:

" Trust Agreement. In the event of payment to any person under this endorsement: ( a ) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; . . . . "

The last quoted provisions are substantially in the form of similar provisions found in the 1966 standard form for uninsured motorist endorsements promulgated by the national underwriters'

bureau. *See* Widiss, Uninsured Motorist Coverage Appendix A, 1., at 293, 297 ( 1969 ).

The plaintiff maintains that under a proper interpretation of the policy the defendant's undertaking to provide him with coverage up to $10,000 should not be excused or discharged by the payment received from the joint tortfeasor's insurer, and that if it should be interpreted to produce this result, the policy provisions in question are void, because repugnant to the financial responsibility law. RSA ch. 268.

In 1957, the financial responsibility law of this state first required insurers to provide uninsured motorist coverage in a minimum amount of $10,000 for any one person. *See* Widiss, *supra s.* 1.11; *Carrignan* v. *Allstate Ins. Co.,* 108 N.H. 131, 132, 229 A.2d 179, 180 ( 1967 ). This requirement remained in effect at the time of this accident, and over the ten year period was upheld and applied by decisions of this court. *Kirouac* v. *Healey,* 104 N.H. 157, 181 A.2d 634 ( 1962 ); *Maryland Cas. Co.* v. *Howe,* 106 N.H. 422, 213 A.2d 420 ( 1965 ); *Carrignan* v. *Allstate Ins. Co., supra; McCaffery* v. *St. Paul Fire Ins. Co.,* 108 N.H. 373, 236 A.2d 490 ( 1967 ).

By act adopted in 1967, the provisions of RSA 268:15 relating to uninsured motorist coverage were placed in a new section, section 15-a ( I ); and other subsections of *s.* 15-a provided for extension of such coverage to vehicles the insurer of which was insolvent. Laws 1967, 284:2 ( 268:15-a( II ) ) effective August 26, 1967; *see McCaffery* v. *St. Paul Fire Ins. Co.,* 108 N.H. 373, *supra.*

The 1967 statute was entitled " An Act Extending Uninsured or Hit-and-Run Motor Vehicle Coverage to Include Motor Vehicles Insured by a Company Which is Insolvent. . . . " According to remarks by the chairman of the insurance committee on the third reading of the bill in the Senate, the bill met with no opposition before committee, and " extends . . . coverage to include vehicles insured by an insolvent company. " 1967 Senate Journal 795.

In fact the bill contained other provisions which appear in subsection IV of section 15-a ( Laws 1967, 284:2 ), relied upon by the defendant herein, which read in part as follows:

" IV. In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement

or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer; . . . . ''

Thus essentially the same language employed by condition 9( a ) of the defendant's policy previously quoted, became a part of the financial responsibility law under the banner of an extension of uninsured motorist coverage benefits.

We are now called upon to determine whether these statutory and policy provisions have the effect contended for by the defendant.

Professor Widiss' treatise indicates that the provisions of *s.* 15 - a( IV ) as inserted by the 1967 amendment, stem from " uniform statutory provisions ", where they appeared under the head of " Subrogation Clauses ". Widiss, *supra* Appendix B. 3, at 313. Referring to the trust agreement provisions, he points out that they purport to control the allocation of the proceeds recovered from a third party " by conferring on the insurance company the subrogation right to all recovery until the company has been fully repaid. " *Id. s.* 5.4. He also suggests that since unliquidated claims are unassignable under the law of some jurisdictions, the provisions of the uniform statute adopted by the 1967 amendment were designed to overcome this common-law inhibition. *Id. s.* 3.10. *But see Dumas* v. *State Farm Mut. Auto. Ins. Co.,* 111 N.H. 43, 46, 274 A.2d 781, 783 ( 1971 ).

In the light of this background material, we are satisfied that the 1967 legislature must be deemed to have intended to confer upon insurers by virtue of subparagraph IV of section 15 - a a right of " subrogation " only as to amounts recovered from the uninsured motorist against whose liability it indemnified its insured; and not the right which the defendant asserts, based upon a literal reading of the section, to set off against the required uninsured motorist coverage up to its dollar limit any sums recovered from any source responsible for the injury including an insured motorist. Adoption of the defendant's contention would effectively nullify the coverage ostensibly provided by the policy, since because of the $15,000 paid by the carrier for the Virginia motorist, the defendant would pay nothing by reason of the required $10,000 uninsured motorist coverage.

It is inconceivable that by passage of an act enlarging the required coverage, the legislature meant at the same time to wholly withdraw such coverage in a case such as the one before us. We conclude that application of the statute and of the limiting provisions of the policy must be restricted to cases where the coverage would otherwise result in overlapping recovery by the injured party — as for example where the claimant recovers some or all of his damages from the uninsured tortfeasor personally, or from his employer under principles of agency, or from an insolvent insurer of the uninsured motorist. (See the proviso at the end of Laws 1967, 284:2 ( 268:15 - a( IV ) ). In such cases, pro tanto reimbursement of the insurer within the dollar limits of the policy could reasonably be justified. *See* Drummond, Uninsured Motorist Coverage, 1969 Ins. Law Jour. 726, 736.

Unless the statute is so restricted, the carrier obligated to furnish uninsured motorist coverage would be subsidized at the expense of its insured, by appropriation of his recovery from an insured third-party motorist, without regard to the former's prior and complete indemnification. This interpretation of the statute would result in nullification of the established legislative purpose to provide a minimum of $10,000 of uninsured motorist coverage and cannot be adopted. *McCaffery* v. *St. Paul Fire Ins. Co.*, 108 N.H. at 375, 236 A.2d at 492; *White* v. *Nationwide Mut. Ins. Co.*, 361 F.2d 785 ( 4th Cir. 1966 ); *Martin* v. *State Farm Mut. Auto. Ins. Co.*, 375 F.2d 720 ( 4th Cir. 1967 ); *Am. Mut. Ins. Co.* v. *Romero*, 428 F.2d 870 ( 10th Cir. 1970 ); *Sellers* v. *U.S. Fidelity & Guar. Co.*, 185 So.2d 689 ( Fla. 1966 ); *see* 28 A.L.R.3d 551, 554, s. 2( a ) ( 1969 ). " Such provisions are justifiable where indenmification has been complete, but their propriety seems highly suspect when invoked by an insurance company to avoid liability when a claimant has not been fully compensated. " Widiss, *supra* s. 8.1, at 283; *see* *Protective Fire & Cas. Co.* v. *Woten,* 186 Neb. 212, 181 N.W.2d 835, 838 ( 1970 ).

As applied to the case at bar, it follows that to the extent that the plaintiff's damages are found to exceed $15,000, the defendant is liable within the limit of $10,000 imposed by its policy. The result is consistent with the rejection by other jurisdictions of provisions designed to compress this type of coverage within narrow confines. *See Johnson* v. *Travelers Indem. Co.,* 269 N.E.2d 700 ( Mass. 1971 ); Annot., 24 A.L.R.3d 1353, 1354, *s.*

2 ( 1969 ); Annot., 28 A.L.R.3d 551, 554 ( 1969 ) *supra. See also Hackman* v. *Am. Mut. Liab. Ins. Co.,* 110 N.H. 87, 261 A.2d 433 ( 1970 ).

*Judgment for the plaintiff.*

All concurred.