Hillsborough
No. 6475

RAYMOND A. GAY

v.

PREFERRED RISK MUTUAL INSURANCE COMPANY

January 31, 1974

*Hanrahan & Flynn* and *John C. Emery* (*Mr. John W. Hanrahan* orally) for the plaintiff.

*Devine, Millimet, Stahl & Branch, Stephen J. Spielman* and *John T. Broderick, Jr.* (*Mr. Broderick* orally) for the defendant.

KENISON, C.J. Petition for declaratory judgment to determine coverage under the uninsured motorist endorsement to an insurance policy issued to the plaintiff by the defendant in New Hampshire. The question is whether the endorsement applies to an accident which occurred in Massachusetts involving the plaintiff and a Massachusetts automobile owner, who was covered by the minimum insurance required in that State, but which was less than that required in New Hampshire at the time of the accident. An agreed statement of facts was submitted to the Trial Court (*Batchelder,* J.) and a verdict was rendered for the plaintiff. The trial court denied the defendant's request for certain findings of facts and rulings of law and its motion to set aside the verdict as being against the law and facts and enter judgment in its favor, and reserved and transferred its exceptions thereto.

On November 29, 1963, the plaintiff was injured in an automobile accident in Methuen, Massachusetts involving

a car owned by James Belfiore of Massachusetts and operated by Maria B. Borowski, also of Massachusetts, who was killed by the collision. The plaintiff was insured under a policy which included an uninsured motorist endorsement for bodily injury in the amount of $10,000 for each person, $20,000 for each accident. The endorsement defined an "uninsured automobile" as "an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of accident..." and contained typical "other insurance" and "subrogation" clauses, none of which are applicable to the present case. Although Borowski had no insurance coverage at the time of the accident, Belfiore had obtained a policy providing the minimum coverage required in Massachusetts for bodily injury in the amount of $5,000 for each person, $10,000 for each accident.

A claim was presented by the plaintiff to the defendant stating that in view of the fact that Belfiore's policy did not meet the New Hampshire minimum requirements, he was entitled to uninsured motorist coverage. The defendant took the position that the uninsured motorist endorsement did not apply because the Belfiore automobile had insurance, even though it was below the minimum required in New Hampshire, and declared as a consequence that the plaintiff need not comply with various conditions set forth in the policy. The plaintiff entered a suit against the estate of Borowski to recover damages for his personal injuries and agreed to settle with Belfiore's insurer in the amount of $4,750 on a covenant not to sue Belfiore. The plaintiff notified the defendant of what he had done and drew its attention to a recent New Hampshire decision, *Carrignan v. Allstate Ins. Co.*, 108 N.H. 131, 229 A.2d 179 (1967), which held that the definition of an uninsured motorist did not exclude an out-of-State motorist insured under the minimum limits of this State. The defendant responded that *Carrignan* was not controlling because in that case the accident occurred in New Hampshire and warned that the previous correspondence was not to be construed as a waiver of any provisions under the policy.

The plaintiff eventually obtained a judgment in the sum of $16,155.10 against the Borowski estate, but was unable to recover any portion of it. Since he had received only $4,750 in settlement from Belfiore, his outstanding claim was $11,405.10. Accordingly, he requested compensation under the uninsured motorist endorsement for this latter amount, but the defendant has refused to satisfy his claim.

The primary question raised by this action concerns the scope of the *Carrignan* decision. In that case the uninsured motorist endorsement, limiting coverage to accidents involving automobiles which had "no bodily injury liability bond or insurance policy applicable at the time of the accident," contained identical language to that of the endorsement in the present case. Rather than construing this phrase in isolation, this court referred to RSA 268:15, which requires minimum coverage against uninsured automobiles, and concluded that the phrase encompassed "an uninsured automobile to the extent to which its insurance coverage falls short of the statutory limits." 108 N.H. at 133-34, 229 A.2d at 180-81; Annot., 26 A.L.R.3d 883, § 5 (1969, Supp. 1973); *see* RSA 268:15-a V (Supp. 1973).

While as a matter of fact the accident in the *Carrignan* case took place in New Hampshire, we can find nothing in that opinion or RSA ch. 268 to limit the application of uninsured motorist protection to accidents occurring in this State. Compulsory uninsured motorist protection was adopted in New Hampshire in 1957 (Laws 1957, 305:8), and was designed to minimize losses to the people of this State who were involved in accidents with uninsured or financially irresponsible motorists. *Charest v. Union Mut. Ins. Co.,* 113 N.H. 683, 313 A.2d 407 (1973); *Raitt v. National Grange Mut. Ins. Co.,* 111 N.H. 397, 399, 285 A.2d 799, 801 (1971); *Maryland Cas. Co. v. Howe,* 106 N.H. 422, 423-24, 213 A.2d 420, 421-22 (1965); *Hein v. Nationwide Ins. Co.,* 106 N.H. 378, 380-81, 213 A.2d 197, 199 (1965); Drummond, *Uninsured Motorist Coverage - A Suggested Approach to Consistency,* Ins. L.J. 726, 740 (1969). Although there was discussion in the senate as to the advisability of making this insurance compulsory, no intent was expressed by the legislators to restrict its coverage to accidents

taking place in this State. N.H.S. Jour. 1119-29 (1957). The language of RSA 268:15 likewise reveals no such purpose, and, in fact, RSA 268:16, which imposes certain mandatory provisions on insurance policies "with respect to accidents which occur in New Hampshire," was specifically amended to exclude its application to uninsured motorist coverage. Laws 1957, 305:9. We can see no persuasive reason why a New Hampshire motorist should be entitled to less coverage against uninsured automobiles beyond the boundaries of this State than within them, and therefore hold that the plaintiff is not barred from recovery because of the geographical situs of the accident. *Mission Ins. v. Brown,* 63 Cal. 2d 508, 510, 47 Cal. Rptr. 363, 407 P.2d 275, 276 (1965); *United Services Auto Ass'n v. Porras,* 214 So. 2d 749 (Fla. App. 1968); A. Widiss, Uninsured Motorist Coverage § 3.5 (1969); *see* 7 J. Appleman, Insurance Law and Practice § 4331 (Supp. 1973).

The next question raised is whether *Raitt v. National Grange Mutual Insurance Co.,* 111 N.H. 397, 285 A.2d 799 (1971), is controlling in regard to the amount of coverage the defendant is obligated to provide under the uninsured motorist endorsement. That case, involving a factual context closely analagous to the present situation, required an insurer to indemnify its insured under such an endorsement up to the statutory limit of $10,000 for damages in excess of the amount received from the tort-feasor. The plaintiff had received a settlement of $15,000 from a third-party motorist but this amount was less than his actual damages. The plaintiff's insurance company attempted to avoid liability by stating that it was only obligated to indemnify him for damages up to the $10,000 limit. Since he had received $15,000, the company argued that its duty in this respect had been extinguished. The court took the position that the effect of this argument "would be [to subsidize the insurer] at the expense of its insured, by appropriation of his recovery from an insured third-party motorist, without regard to the former's prior and complete indemnification. This interpretation of the statute [RSA 268:15] would result in nullification of the established legislative purpose to provide a minimum of $10,000

of uninsured motorist coverage and cannot be adopted .... 'Such provisions are justifiable where indemnification has been complete, but their propriety seems highly suspect when invoked by an insurance company to avoid liability when a claimant has not been fully compensated'" (citations omitted). *Id.* at 401, 285 A.2d at 802 (quoting A. Widiss, Uninsured Motorist Coverage § 8.1, at 283 (1969)).

In our view *Raitt* has established the governing rule for situations such as in the present case where the claimant has not been fully compensated, and we hold that since the plaintiff's damages ($16,155.10) are in excess of the amount received ($4,750) by $11,405.10, the defendant has a duty to furnish the full statutory coverage of $10,000. *Hogan v. Allstate Ins. Co.,* 287 Ala. 696, 255 So. 2d 35, 37-38 (1971); *United Services Auto. Ass'n v. Cotter,* 241 So. 2d 733, 734 (Fla. App. 1970); *Pickering v. American Employers Ins. Co.,* 282 A.2d 584, 589-90 (R.I. 1971); Annot., 28 A.L.R.3d 551, § 4 (1969, Supp. 1973).

The final issue relates to the trial court's denial of the defendant's request for findings of fact and rulings of law on the question of whether the plaintiff breached or the defendant waived certain conditions in the policy. The uninsured motorist endorsement provides that there is no coverage for "bodily injury to an insured ... with respect to which such insured ... shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person ... who may be legally liable therefor." The defendant basically contends that the settlement with Belfiore on a covenant not to sue and the prosecution of the suit against the Borowski estate breached the terms of the uninsured motorist endorsement because the required consent of the insurance company had not been obtained. It also asserts that plaintiff should have proceeded by way of arbitration before acting against the other parties because the policy imposes a duty to arbitrate any dispute concerning the legality or amount of a claim.

The record shows that on May 4, 1965, the plaintiff wrote to the defendant requesting coverage for his claim,

and stated in the alternative that "[i]f your company is not willing to cover the excess we must obtain your agreement to accept payment from the other company while we must submit our problem to arbitration as provided for by your policy or to our Courts if you prefer." The defendant replied on May 24, 1965, that "[i]n view of the fact that we do not afford uninsured motorist coverage which would be applicable in this case we do not believe this permission is necessary.... [I]t would appear that the only way this can be fully resolved if you persist in your present line of thinking would be through a court action." On June 9, 1965, the defendant again repeated in a letter to the plaintiff that "we cannot insist upon the performance of the conditions precedant (sic) under this coverage." On the basis of these letters, the plaintiff settled the claim with Belfiore and prosecuted the suit against the Borowski estate without the defendant's consent. After receiving notice of plaintiff's actions on May 5, 1967, the defendant then disclaimed any waiver of policy defenses by its previous letters.

In view of this correspondence, we believe that the defendant's position is untenable. It is clear from the record that the plaintiff attempted to comply with the terms of the policy, but was rebuffed at every turn by the defendant. The defendant's conduct expressed an intention to forego its defenses under the policy through its denial of all liability. *See American Ins. Co. v. Nationwide Mut. Ins. Co.,* 110 N.H. 192, 195-96, 270 A.2d 907, 910 (1970); *Bowen v. Merchants Mut. Cas. Co.,* 99 N.H. 107, 111-12, 107 A.2d 379, 383-84 (1954); *Therrien v. Maryland Cas. Co.,* 97 N.H. 180, 181-82, 84 A.2d 179, 182 (1951). An insurer may not waive such defenses in this manner, and then subsequently invoke them for its own benefit to disclaim coverage against its insured. *Porter v. Empire Fire & Marine Ins. Co.,* 12 Ariz. App. 2, 6, 467 P.2d 77, 81 (1970); *Calhoun v. State Farm Mut. Auto. Ins. Co.,* 254 Cal. App. 2d 407, 410-13, 62 Cal. Rptr. 177, 180-82 (1967); *Vanguard Ins. Co. v. Polchlopek,* 18 N.Y.2d 376, 382, 222 N.E.2d 383, 387, 285 N.Y.S.2d 515, 520 (1966); Annot., 25 A.L.R.3d 1275, § 5 (b) (1969, Supp. 1973).

18

*Kirouac v. Healey,* 104 N.H. 157, 181 A.2d 634 (1962), cited by the defendant in support of its position, is inapposite. There the question before the court was whether such arbitration provisions were valid under RSA 268:15 and if so, whether they were binding upon an insured. *Id.* at 161-63, 181 A.2d at 637-38. Here the gravamen of the dispute is whether the conditions of the policy were waived by the defendant. We believe that the trial court properly denied the defendant's request, and the order is

*Defendant's exceptions overruled.*

All concurred.