Belknap
No. 83-232

MERCHANTS MUTUAL INSURANCE GROUP

v.

ORTHOPEDIC PROFESSIONAL ASSOCIATION & a.

April 6, 1984

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Joseph M. McDonough, III, & a.* on the brief, and *Donald E. Gardner* orally), for the plaintiff.

*Law Offices of James J. Kalled*, of Ossipee (*Robert G. Whaland* on the brief and orally), for the defendants.

DOUGLAS, J. In this appeal, the plaintiff, Merchants Mutual Insurance Group (Merchants), petitioned for declaratory judgment to determine its coverage obligation to the defendant Walter N. Garger under the uninsured motorist endorsements of three separate insurance policies with respect to injuries resulting from a non-physical contact accident involving an unidentified vehicle. The Master (*Mayland H. Morse, Jr.*, Esq.) found that Garger is entitled only to the minimum of $20,000 coverage under the uninsured motorist provisions of each of two of the policies, but that, since

Merchants is entitled to offset against its uninsured motorist liability the amounts paid to Garger under a workers' compensation contract issued by Merchants to the defendant Orthopedic Professional Association, there are, in fact, no benefits available to the defendants under either of the policies. The Trial Court (*Cann,* J.) approved the master's recommendation, and the defendants appealed.

According to the record, on November 10, 1979, the defendant Walter N. Garger was injured in a non-contact accident involving an unidentified vehicle. Garger alleges that while driving eastbound on Route 11-A in Alton, New Hampshire, he was forced off the road by another vehicle, which then fled the scene. At the time of the accident, Garger was en route to the Huggins Hospital in Wolfeboro where he was a staff surgeon. It is undisputed that at the time of the accident, he was acting within the scope of his employment for the defendant Orthopedic Professional Association.

As a result of the accident, Garger collected $163,306 in workers' compensation benefits under a policy issued by Merchants Mutual to Orthopedic Professional Association. The workers' compensation policy coverage is not in issue in this appeal except to the extent that the offset provisions included in each of the three disputed policies reduce Garger's uninsured motorist benefits by the amount of workers' compensation he received.

Following the accident, Garger submitted a claim to Merchants Mutual for uninsured motorist benefits under three separate policies. The first policy is an automobile liability policy, issued to Orthopedic Professional Association by Merchants Mutual. The policy provides $20,000 per person in uninsured motorist coverage. The second policy is an automobile liability policy issued by Merchants Mutual to Garger's wife. It provides uninsured motorist coverage in the amount of $100,000 per person. The third policy, issued to Orthopedic Professional Association by Merchants Mutual, is a "Special Multi-peril" policy with an uninsured motorist endorsement. That policy's uninsured motorist benefits are in dispute, as they were not typed onto the declarations page. The parties agree that Garger is an insured under the first two policies. Merchants Mutual denies that Garger is an insured under the special multi-peril policy's uninsured motorist endorsement.

The principal issues raised on appeal concern the validity of two provisions included in each of the three disputed policies. First, each of the three uninsured motorist endorsements limits hit-and-run coverage to accidents involving physical contact; second, each policy also includes a standard "limits of liability" provision which reduces the amount payable under each policy by the amount paid to the insured under the workers' compensation laws.

The first issue is whether the master erred in finding that *Soule v. Stuyvesant Ins. Co.*, 116 N.H. 595, 364 A.2d 883 (1976), only voided a physical contact requirement up to the minimum statutory limits of uninsured motorist coverage in effect at the time of the accident. The master found that coverage in excess of the statutory minimum is not affected by *Soule* but is dependent upon the terms and conditions of the relevant policy. He determined that the uninsured motorist endorsements of Merchants Mutual's policies require physical contact and that "[s]ince there was no hit, there was no 'hit and run' vehicle to which the excess limits of the uninsured motorist endorsement of the . . . polic[ies] might apply." The master concluded that "therefore, there becomes available here only the minimum of $20,000 coverage under each of the . . . policies." We find that the master erred as a matter of law and, therefore, reverse. *See 590 Realty Co., Ltd. v. City of Keene*, 122 N.H. 284, 285, 444 A.2d 535, 535 (1982).

In *Soule*, we held that the "policy requirement of physical contact is an impermissible restriction of coverage. . . ." *Soule v. Stuyvesant Ins. Co.*, 116 N.H. at 597, 364 A.2d at 884. We reasoned that the "New Hampshire Legislature chose *not* to insert a physical contact requirement into RSA 268:15-a . . . as has been done in some jurisdictions" (emphasis added) but, instead, extended "coverage to all accidents caused by uninsured motorists or hit-and-run motorists without any requirement of physical contact." *Id.* at 596–97, 364 A.2d 884. Thus, we concluded that "the exclusion was an 'unreasonable restriction' on the statutory *scope* of coverage." *Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.*, 120 N.H. 73, 76, 411 A.2d 1101, 1103 (1980) (emphasis added) (quoting *Soule v. Stuyvesant*, 116 N.H. 595, 364 A.2d 883 (1976)).

██ The statutory *scope* of coverage had previously been enlarged in 1969 when the legislature amended the uninsured motorist statute to permit an insured to purchase coverage in excess of the statutory minimum. Laws 1969, 418:1. Since the statute permits the insured to purchase uninsured motorist coverage up to the same limits as liability coverage, RSA 268:15-a (now codified at RSA 264:15), any attempt to reduce those higher purchased limits by applying a physical contact requirement is ineffective because the statute does not require physical contact. *See Soule v. Stuyvesant Ins. Co.*, 116 N.H. 595, 597, 364 A.2d 883, 884 (1976). "Policy provisions designed to reduce the coverage to less than that prescribed by the express or implied provisions of the statute are void." *Id.* at 596, 364 A.2d at 884.

█ Accordingly, we hold that the physical contact requirement

contained in the uninsured motorist endorsements of the three policies is void as an impermissible restriction on coverage. The defendant is entitled to the full coverage, up to the policy limits.

The second issue concerns the validity of the "limits of liability" clause contained in each policy. It provides:

> "Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by . . . .
> (2) The amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law. . . ."

The effect of this provision is to reduce the uninsured motorist coverage provided in each of the policies, by the amount of any workers' compensation received by the insured. Whether uninsured motorist coverage may be "set off" by workers' compensation benefits was considered in *Hackman v. American Mutual Liab. Ins. Co.*, 110 N.H. 87, 261 A.2d 433 (1970). In *Hackman*, we held that the uninsured motorist carrier could reduce its coverage by the amount of any workers' compensation received by the insured. This case questions the continued validity of that holding.

The material facts of *Hackman* are identical to those of the instant case. The insured in that case, as a result of an automobile accident, collected workers' compensation benefits from his employer's carrier. He then sought to receive the benefits of an automobile liability policy with an uninsured motorist endorsement issued by the same carrier. The uninsured motorist policy contained a workers' compensation set-off provision. We held that the provision permitting an uninsured motorist liability carrier to deduct payments made by a workers' compensation carrier did not violate the uninsured motorist statute, RSA 268:15 (now codified at RSA 264:15), because under the workers' compensation statute, RSA 281:14, the compensation carrier is entitled to a lien, for the amounts paid in benefits, against any damages recovered from a third-party tortfeasor. *Id.* at 92, 261 A.2d at 436.

This court reasoned in *Hackman* that since the statute's "design and purpose . . . was to provide protection only up to the minimum statutory limits for bodily injuries caused by financially irresponsible motorists . . . [and] not . . . to provide the insured with greater insurance protection than would have been available had the insured been injured by an operator with a policy containing minimum statutory limits," the reduction was permissible under the

statute. *Id.* at 91–92, 261 A.2d at 436 (quoting *Maryland Cas. Co. v. Howe*, 106 N.H. 422, 424, 213 A.2d 420, 422 (1965)).

■ The result in *Hackman* was predicated on the rationale that the uninsured motorist statute was not designed to provide greater insurance protection than the statutory minimum. The rationale underlying that decision, however, has been seriously undermined by amendments to the uninsured motorist statute and by the recent emergence of a substantial body of case law construing the statute; thus, the decision no longer has validity.

This court has taken a harsh view of attempts to reduce uninsured motorist benefits below the statutory scope of coverage. In *Courtemanche v. Lumbermens Mut. Cas. Co.*, 118 N.H. 168, 385 A.2d 105 (1978), we held that a clause which reduced recovery under the policy by amounts received under other applicable policies violated the uninsured motorist statute because the statute "evinces a legislative intent to allow a person to protect himself against injury from uninsured motorists to the extent that he protects himself against liability." *Id.* at 172, 385 A.2d at 107. In so holding, we overruled *Maryland Cas. Co. v. Howe*, 106 N.H. 422, 213 A.2d 420 (1965), stating that the rationale that the uninsured motorist statute permits an insured to recover only the statutory minimum and not any greater insurance protection was no longer valid. Similarly, in *Bertolami v. Merchants Mutual Ins. Co.*, 120 N.H. 308, 414 A.2d 1281 (1980), we voided a clause that allowed an uninsured motorist carrier to deduct medical payments from amounts paid under the policy's uninsured motorist endorsement because it violated the uninsured motorist statute by reducing recovery below the statutory minimum. *See also Vigneault v. Travelers Ins. Co.*, 118 N.H. 75, 382 A.2d 910 (1978); *Gay v. Preferred Risk Mut. Ins. Co.*, 114 N.H. 11, 314 A.2d 644 (1974); *Raitt v. National Grange Mut. Ins. Co.*, 111 N.H. 397, 285 A.2d 799 (1971).

At the time of the accident, RSA 268:15-a (now codified at RSA 264:15) allowed an insured to purchase uninsured motorist coverage up to the amount that he contracts to protect himself against liability. The act did *not* provide for any reduction because of the possibility of duplicated benefits from another source. *See Courtemanche v. Lumbermens Mut. Cas. Co.*, 118 N.H. at 172, 385 A.2d at 107.

■ Workers' compensation benefits are certainly *other insurance*. Thus, any policy provision which requires an uninsured motorist to suffer a reduction in the coverage paid for, by the amounts of workers' compensation received by the insured, is an invalid restriction of the statutory scope of coverage.

The law has long recognized that payments by sources other than the tortfeasor do not act as an excuse by him to avoid payment to the injured party. "Under the collateral source rule, if a plaintiff is compensated in whole or part for his damages by some source independent of the tort-feasor he is still permitted to make full recovery against him. The rule that collateral benefits are not subtracted from the plaintiff's recovery has been applied to . . . employment benefits. . . ." *Moulton v. Groveton Papers Co.*, 114 N.H. 505, 509, 323 A.2d 906, 909 (1974). "[A] tort defendant can derive no benefit from the fact that plaintiff was insured or that his bills have been paid by a workmen's compensation insurer . . . ." *Anderson v. DeLaurier*, 106 N.H. 57, 59, 204 A.2d 230, 231 (1964).

We see a compelling analogy between the collateral source rule and the situation at bar, where an insured is seeking compensation under contract from his own uninsured motorist carrier. Thus, we are persuaded that the insurance carrier may not reduce the insured's recovery by the amount received from a collateral source. If we were to adopt a different position where an insured has received workers' compensation benefits and seeks also to recover uninsured motorist benefits, we would be creating a windfall for uninsured motorist carriers. "Moreover, this windfall will sometimes be at the expense of the plaintiff, because 'in many instances the plaintiff has paid for these [collateral] benefits in the form of [insurance premiums or] concessions in the wages he receives because of such fringe benefits.'" *Carson v. Maurer*, 120 N.H. 925, 940, 424 A.2d 825, 836 (1980) (quoting *Moulton v. Groveton Papers Co.*, 114 N.H. 505, 509, 323 A.2d 906, 909 (1974)).

We note that our holding is in accord with the conclusion of a majority of jurisdictions, that have held workers' compensation set-off clauses invalid as repugnant to their uninsured motorist statutes. *See, e.g., Booth v. Seaboard Fire & Marine Insurance Company*, 431 F.2d 212 (8th Cir. 1970); *State Farm Mutual Automobile Ins. Co. v. Cahoon*, 252 So. 2d 619 (Ala. 1971); *Allied Mutual Insurance Company v. Larriva*, 19 Ariz. App. 385, 507 P.2d 997 (1973); *The Travelers Ins. v. National Farmers Union*, 252 Ark. 624, 480 S.W.2d 585 (1972); *Nationwide Mutual Ins. Co. v. Hillyer*, 32 Colo. App. 163, 509 P.2d 810 (1973); *Leist v. Auto-Owners Ins. Co.*, 160 Ind. App. 322, 311 N.E.2d 828 (1974); *McClure v. Employers Mut. Cas. Co.*, 238 N.W.2d 321 (Iowa 1976); *Aldcroft v. Fidelity & Casualty Co. of N.Y.*, 106 R.I. 311, 259 A.2d 408 (1969).

Merchants Mutual argues that when the workers' compensation carrier and uninsured motorist carrier are the same, the uninsured motorist carrier can include a workers' compensation deduction

clause in its policy because in so doing it does no more than assert its statutory lien as the workers' compensation carrier. The statutory lien to which the plaintiff refers is found in RSA 281:14 (Supp. 1983), which provides:

> "When an injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating *in some person . . . a legal liability to pay damages* in respect thereto, the injured employee, in addition to the benefits of this chapter, may obtain damages from or *proceed at law against such other person* to recover damages; provided, however, that the employer, or the employer's insurance carrier shall have a lien on the amount of damages recovered by the employee, less the expenses and costs of action to the extent of the compensation, medical, hospital or other remedial care already paid, or agreed or awarded to be paid by the employer, or the employer's insurance carrier, under this chapter. . . ."

(Emphasis added.)

The master found that the statute creates a lien in favor of a compensation carrier to recover amounts an employee receives under an uninsured motorist endorsement. The next question for the court, therefore, is whether the uninsured motorist carrier is "such other person" with a "legal liability to pay damages."

■■  We begin our analysis by noting that, under workers' compensation law, third-party actions are "based on the concept that the ultimate loss from wrong-doing should fall upon the wrongdoer." *Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 87, 352 A.2d 741, 744 (1976). "The third party action . . . is the action of the employee claiming that his injuries resulted from that party's negligence." *Id.* at 88, 352 A.2d at 744–45. The workers' compensation carrier's statutory lien is "against the 'amount of damages recovered by the employee [from a third-party tortfeasor]. . . .'" *Id.* at 85, 352 A.2d at 743.

■■  It is obvious that the legal liability to which the statute refers is a tort liability. The third-party action is an action for negligence, strict liability, etc., and the statutory lien obtained by the compensation carrier is against amounts received by the employee from that tortfeasor. In the instant case, the uninsured motorist carrier does not insure the tortfeasor against liability, but insures the employee against the risk of inadequate compensation if he is injured in an accident with an uninsured motorist. The obligation of

the uninsured motorist carrier arises out of contract, although that obligation is precipitated by a third-party's tortious act. Therefore, such payments are not payments by "some person" with a "legal liability to pay damages" to the employee, and, accordingly, RSA 281:14 (Supp. 1983) does not create a statutory lien in favor of the compensation carrier to recover amounts received by the employee from an uninsured motorist carrier.

The defendant's reliance on *Smith v. Am. Employers Ins. Co.*, 102 N.H. 530, 163 A.2d 564 (1960), is misplaced. There we held that the words "some person" could include an insurance carrier. *Id.* at 532, 163 A.2d at 566. We stated, however, that "the claim here against the carrier is for a tort allegedly committed by it as a third person against the plaintiff. Payment to the plaintiff by the [insurance company] would not be under the policy nor in its status as carrier, but rather . . . out of an alleged breach of common-law duty." *Id.* at 533, 163 A.2d at 567.

Clearly, the liability of the insurance company in *Smith* was a tort liability for failure to perform its duty to inspect equipment properly. Hence, while the words "some person" might on those facts include an insurance company, the words "legal liability to pay damages" clearly limit the phrase to third-party tortfeasors. Because the uninsured motorist carrier in the instant case is not a third-party tortfeasor, and because it does not insure the tortfeasor, the compensation carrier has no lien against amounts the uninsured motorist carrier pays to the injured employee under its uninsured motorist endorsement.

In *Bilodeau v. Oliver Stores, Inc.*, 116 N.H. at 87, 352 A.2d at 744, we stated that if an injured workman was allowed to keep the entire amount of his compensation award and his common-law negligence recovery he would receive a double recovery. This case is not one in which the insured will receive a double recovery, but one in which an insured will receive compensation from two separate sources. The double recovery which the statute seeks to prevent occurs when the injured employee receives compensation from his workers' compensation carrier and then also receives compensation, including amounts for lost wages, from the tortfeasor in a negligence action.

Here, the recovery was from an insurance carrier who had *contracted to pay* the insured for injuries occasioned by an uninsured motorist. Under these circumstances, we hold that there is no double recovery. While it is true that in some instances, the injured employee may receive duplicate benefits for the same injury, the

more equitable result is to permit the employee to recover because he has paid for the benefits in the form either of insurance premiums or of reduced wages he took in lieu of such fringe benefits. In this respect, this result is no different from the situation in which several medical payments policies pay the same hospital bills two or three times over. *See Bertolami v. Merchants Mutual Ins. Co.*, 120 N.H. 308, 414 A.2d 1281 (1980); *Shea v. United Services Auto. Ass'n*, 120 N.H. 106, 411 A.2d 1118 (1980).

■■ "The rights and remedies under RSA chapter 281 are purely statutory. The nature and extent of compensation to the injured employee . . . is governed by the express statutory language and that which can be implied therefrom." *Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 87, 352 A.2d 741, 744 (1976). "Also, unlike tort actions, no damages or compensation are awarded for pain and suffering, disfigurement as such, loss of consortium and other elements of common law damages." *Id.* at 86–87, 352 A.2d at 744. Here, the employee sought to protect himself and his family by purchasing additional insurance to supplement benefits to which he may be entitled under the workers' compensation statute.

> "Certainly there is no public policy against [an employee] protecting him[self] and his family against added expense over and above such statutory benefits, unless a statute, in clear language, might interdict the application of such foresight and concern about his family's security. . . . We think there is no such negative sanction in the statute here unless we deign to indulge in some kind of unwarranted inclusion by implication, of language said to be, but not actually there."

*Southeast Furniture Co. v. Barrett*, 24 Utah 2d 24, 26, 465 P.2d 346, 348 (1970). A number of jurisdictions considering this issue also have found that a workers' compensation carrier was not entitled to recover benefits available under an uninsured motorist endorsement. *Knight v. Insurance Co. of North America*, 647 F.2d 127 (10th Cir. 1981); *Bogart v. Twin City Fire Insurance Co.*, 473 F.2d 619 (5th Cir. 1973); *State Farm Mutual Automobile Ins. Co. v. Cahoon*, 252 So. 2d 619 (Ala. 1971); *Allied Mutual Insurance Company v. Larriva*, 19 Ariz. App. 385, 507 P.2d 997 (1973); *Travelers Ins. v. National Farmers Union*, 252 Ark. 624, 480 S.W.2d 585 (1972); *State Comp. Ins. Fund v. Gulf Ins. Co.*, 628 P.2d 182 (Colo. App. 1981); *Janzen v. Land O'Lakes, Inc.*, 278 N.W.2d 67 (Minn. 1979); *Rhodes v. Automotive Ignition Co.*, 218 Pa. Super. 281, 275 A.2d 846 (1971); *Southeast Furniture Co. v. Barrett*, 24 Utah 2d 24, 465 P.2d

346 (1970); *Horne v. Insurance Company*, 203 Va. 282, 123 S.E.2d 401 (1962).

The final issue is the extent of coverage under the special multiperil policy. The amount of that policy's uninsured motorist benefits is in dispute as no figure representing the policy limit was typed onto the declarations page.

At trial, John Colby, an experienced insurance agent, testified that the special multi-peril policy language is complex and difficult to understand. He further testified that it would take him approximately an hour to determine whether its uninsured motorist benefits were applicable to Garger's accident.

The master found that the special multi-peril policy resembled a "Chinese time table" and determined that "a reasonable person in the position of Dr. Garger would fairly conclude from a careful reading of the policy provisions that the uninsured motorist language extended to a highway accident." *See Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982). He concluded, however, that because the policy contained a physical contact requirement and because the carrier was entitled to set off amounts paid in workers' compensation, there was no available coverage. As discussed above, this conclusion was erroneous.

The master correctly determined that the insured in the instant case could reasonably expect to be covered under the policy. *Id. See also Grimes v. Concord Gen'l Mut. Ins. Co.*, 120 N.H. 718, 722, 422 A.2d 1312, 1315 (1980). Because the limits of coverage were not typed onto the declarations page, however, we must remand for a determination of the extent of coverage under the uninsured motorist endorsement of the policy, in light of our holding today that the physical contact requirement and the workers' compensation set-off clauses are void.

Finally, we find that the defendants are entitled to court costs and reasonable attorney's fees under RSA 491:22-b.

*Reversed and remanded.*

All concurred.