Merrimack
No. 90-456

G. WELLS ANDERSON

v.

FIDELITY & CASUALTY COMPANY OF NEW YORK

July 26, 1991

*Hall, Morse, Anderson, Bauer & Miller P.C.*, of Concord (*Charles P. Bauer* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Jeffrey H. Karlin* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Fidelity & Casualty Co. of New York (Fidelity), appeals an order of the Superior Court (*McHugh*, J.) finding Fidelity liable to the plaintiff, G. Wells Anderson, as personal representative of the Estate of Kristian W. Anderson (the estate), for the payment of $150,000 plus interest. The issue in this appeal is whether an uninsured motorist coverage provider may reduce payments made under such coverage by amounts the insured has recovered from non-motorist tort-feasors. The trial court held that it may not, and, for the reasons that follow, we reverse.

On May 14, 1983, Kristian Anderson was killed in an automobile accident in Hoquiam, Washington, while a passenger in a vehicle driven by Guy Pere, an underinsured motorist. Anderson's estate subsequently filed suit against Pere, the State of Washington, which owned and maintained the road on which the accident occurred, and ITT-Rayonier, Inc., which owned and maintained railroad tracks which crossed the road. The estate settled with Pere for $14,180, with the State of Washington for $100,000, and with ITT-Rayonier, Inc. for $50,000.

At the time of the accident, Kristian Anderson was covered by an automobile insurance policy (the policy) issued by Fidelity. The policy provided for $500,000 of uninsured/underinsured motorist coverage. On January 5, 1987, the estate filed a demand for arbitration under the policy. Following a hearing held on December 14, 1987, a panel of three arbitrators determined that the damages suffered by the estate totalled $302,711.85.

Fidelity claimed the right to reduce the arbitration award by the amounts the estate recovered from all three of the tort-feasors. Hence, Fidelity paid the estate $138,531.85, which equals the award of $302,711.85 less $164,180, the amount paid by the tort-feasors. On March 23, 1988, the estate filed a petition for declaratory judgment asking the superior court to order Fidelity to pay an additional $150,000 plus interest. This amount equalled the payments made by the State of Washington and ITT-Rayonier, Inc.; the estate does not dispute Fidelity's right to a setoff in the amount of the payment

made by Pere, *viz.* $14,180. After a hearing, the superior court found for the plaintiff in an order dated September 18, 1990. The court held that although the plaintiff's policy clearly allowed Fidelity the $150,000 setoff, in doing so the policy violated the uninsured motorist statute, RSA 264:15 (1982 & Supp. 1990). The superior court found that the words of RSA 264:15, IV were ambiguous, but that the prior decisions of this court required the statute to be interpreted so as to allow setoff only of amounts recovered from uninsured *motorists*, and did not allow setoff of amounts recovered from *non-motorists*, such as the State of Washington and ITT-Rayonier, Inc.

On appeal, Fidelity argues that requiring it to pay an additional $150,000 would provide the plaintiff with double recovery, and that RSA 264:15, IV entitles Fidelity to set off that amount. The plaintiff, on the other hand, draws a distinction between motorist tort-feasors and non-motorist tort-feasors, and contends that the statute and relevant case law allow a setoff only as to motorist tort-feasors.

All automobile insurance policies issued or delivered in New Hampshire must provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles . . . because of bodily injury . . . resulting therefrom." RSA 264:15, I (Supp. 1990). "Uninsured motor vehicle" is defined to include underinsured motor vehicles such as the one driven by Pere. *See* RSA 259:117. The uninsured motorist coverage provided must be equal to the liability coverage under the policy. RSA 264:15, I (Supp. 1990). In addition, the provision specifically at issue in this case, RSA 264:15, IV, provides:

> "In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of *any* settlement or judgment resulting from the exercise of *any* rights of recovery of such person against *any* person or organization legally responsible for the bodily injury for which such payment is made . . . ."

(Emphasis added.)

As the superior court found, this provision could reasonably be interpreted to allow for the setoff of amounts recovered from any tort-feasor. *Cf. Raitt v. National Grange Mut. Ins. Co.*, 111 N.H. 397, 400, 285 A.2d 799, 802 (1971). This court has rendered a number of decisions which affect the interpretation of RSA 264:15, IV. The present question must, if possible, be answered within the context of

existing case law. *See Petition of Correia*, 128 N.H. 717, 721–22, 519 A.2d 263, 266 (1986).

The first case to deal with the complex area of uninsured motorist claims for accidents involving multiple tort-feasors was *Raitt v. National Grange Mutual Insurance Co.*, 111 N.H. 397, 285 A.2d 799 (1971). In *Raitt* the plaintiff, a passenger, was injured in an accident involving two *motorist* tort-feasors. *Id.* at 397–98, 285 A.2d at 800. One tort-feasor was uninsured; the other carried $15,000 of insurance and settled with the plaintiff for that amount. *Id.* The plaintiff's uninsured motorist carrier denied coverage because the plaintiff had already recovered $15,000 from one tort-feasor, which was more than the $10,000 limit in the plaintiff's policy. *Id.* In determining the extent of the coverage, the Court found that the legislature, in enacting the provisions now found at RSA 264:15, IV,

> "intended to confer upon insurers . . . a right of 'subrogation' only as to amounts recovered from the uninsured motorist against whose liability it indemnified its insured; and not the right which the defendant asserts, based upon a literal reading of the section, to set off against the required uninsured motorist coverage up to its dollar limit any sums recovered from any source responsible for the injury including an insured motorist."

*Id.* at 400, 285 A.2d at 802. The plaintiff points to this language as foreclosing Fidelity from setting off any money recovered from sources other than Pere, the underinsured motorist. However, this language must be read in the context of the following discussion in *Raitt.* The *Raitt* court went on to conclude that

> "application of the statute . . . must be restricted to cases where the coverage would otherwise result in overlapping recovery by the injured party—as for example where the claimant recovers some or all of his damages from the uninsured tort-feasor personally, or from his employer under principles of agency, or from an insolvent insurer of the uninsured motorist. In such cases, pro tanto reimbursement of the insurer within the dollar limits of the policy could reasonably be justified."

*Id.* at 401, 285 A.2d at 802 (citation omitted). Thus, the court indicated that the provisions now found in RSA 264:15, IV should be interpreted to prevent double recovery.

Further, in applying its analysis to the facts before it, the court held that "*to the extent that* the plaintiff's damages are found to *ex-*

*ceed* $15,000, the defendant is liable within the limit of $10,000 imposed by its policy." *Id.* (emphasis supplied). Accordingly, the plaintiff in *Raitt* was not entitled to double recovery; had the actual damages been $15,000 or less, the plaintiff's insurer would have had no liability. The interpretation advocated by the plaintiff here would lead to a contrary result. If no setoff at all had been allowed in *Raitt,* the insurer would have been liable for whatever damages the plaintiff there had suffered, up to $10,000, regardless of prior recovery.

■ Consequently, we interpret *Raitt* as allowing an uninsured motorist insurance carrier to set off the amounts recovered from other tort-feasors *to the extent* that those amounts would represent double recovery. Put another way, while a payment under uninsured motorist coverage may be set off by amounts recovered from the uninsured motorist, *see Vigneault v. Travelers Ins. Co.,* 118 N.H. 75, 79, 382 A.2d 910, 913 (1978), the damages used to calculate the required payment may be set off by amounts recovered from other tort-feasors, *cf. Langston v. Allstate Ins. Co.,* 40 Md. App. 414, 428, 392 A.2d 561, 568 (1978) (interpreting policy language to subtract amount actually recovered from *damages*) (since invalidated by MD. ANN. CODE art. 48A, § 541(c)(3) (1991)).

This interpretation of *Raitt* is also supported by the other New Hampshire case addressing a multiple tort-feasor situation, *Gay v. Preferred Risk Mutual Insurance Co.,* 114 N.H. 11, 314 A.2d 644 (1974). In *Gay,* one tort-feasor had settled with the plaintiff for $4,750; the other was uninsured. *Id.* at 13, 314 A.2d at 645. After reviewing *Raitt,* the court held:

> "In our view *Raitt* has established the governing rule for situations such as in the present case where the claimant has not been fully compensated, and we hold that since the plaintiff's damages ($16,155.10) are in excess of the amount received ($4,750) by $11,405.10, the defendant has a duty to furnish the full statutory coverage of $10,000."

*Id.* at 16, 314 A.2d at 647. In support of our holding in *Gay,* we there cited three cases from other jurisdictions, *see id.,* in all of which it was carefully noted that recovery may not exceed actual damages, *see Hogan v. Allstate Ins. Co.,* 255 So. 2d 35, 38 (Ala. 1971); *United Services Automobile Association v. Cotter,* 241 So. 2d 733, 734 (Fla. Dist. Ct. App. 1970); *Pickering v. American Empl. Ins. Co.,* 109 R.I. 143, 153, 282 A.2d 584, 590 (1971); *see also Courtemanche v. Lumbermens Mut. Cas. Co.,* 118 N.H. 168, 173, 385 A.2d 105, 108 (1978) (stacking of uninsured motorist policies is limited by total damages).

Thus, although the *Gay* court also manifested a concern for full compensation, it subtracted from the damages the amount recovered from one of the tort-feasors, precisely as required by our interpretation of *Raitt*. Applying this rule to the case at bar yields the result sought by Fidelity.

Our decision in *Merchants Mutual Insurance Group v. Orthopedic Professional Ass'n*, 124 N.H. 648, 480 A.2d 840 (1984) does not compel a different result. In that case, we held that recovery under uninsured motorist coverage may not be reduced by workers' compensation benefits received by the insured. *Id.* at 655, 480 A.2d at 844. We supported this holding by analogy to the collateral source rule, which prohibits subtracting collateral benefits from a plaintiff's recovery from a tort-feasor. *Id.* at 656, 480 A.2d at 844.

*Orthopedic* is distinguishable for two reasons. First, RSA 264:15, IV was not applicable to the situation in *Orthopedic*, nor was it mentioned in the decision. A provider of workers' compensation benefits simply is not a "person or organization legally responsible for the bodily injury," as required for setoff by RSA 264:15, IV. Second, analogy to the collateral source rule is not available with respect to the case at bar: a joint tort-feasor is not a collateral source. *Barker v. Cole*, 396 N.E.2d 964, 970 (Ind. Ct. App. 1979). Unlike payments received from a collateral source, *see Moulton v. Groveton Papers Co.*, 114 N.H. 505, 509, 323 A.2d 906, 909 (1974), those received from joint tort-feasors are subtracted from total liability, *Saltzman v. Town of Kingston*, 124 N.H. 515, 521, 475 A.2d 1, 4 (1984); *see* RSA 507:7-h (Supp. 1990).

The plaintiff's final argument is that this case is distinguishable from *Raitt* and *Gay* because the State of Washington and ITT-Rayonier, Inc. are not *motorist* tort-feasors, as were the other tort-feasors in those cases. The plaintiff contends that RSA 264:15, IV only allows a setoff for amounts recovered from motorist tort-feasors. He first invokes the statute itself, arguing that the language "for which such payment was made" restricts setoff to amounts received from the uninsured motorist. A related argument seems to be based on a notion of symmetry: because a non-motorist cannot "trigger" payments under uninsured motorist coverage, such payments should not be set off by recovery from non-motorists. The plaintiff also asserts that the statute's location in RSA chapter 264, "Accidents and Financial Responsibility," of Title 21, "Motor Vehicles," requires a narrow interpretation of the language allowing for setoff.

■ We find no merit in the plaintiff's argument. RSA 264:15, IV does not by its terms directly or indirectly limit setoff to amounts

recovered from motorist tort-feasors. Rather, it specifically uses broad, inclusive language, referring to *"any* settlement," *"any* rights of recovery," and *"any* . . . organization legally responsible for the bodily injury." RSA 264:15, IV (emphasis added). Applying the plain meaning of the statute, *see Petition of Jane Doe,* 132 N.H. 270, 276–77, 564 A.2d 433, 438 (1989), the State of Washington and ITT-Rayonier, Inc. are each a "person or organization legally responsible for the bodily injury [the death of Kristian Wells Anderson] for which such payment [from Fidelity to the estate] is made." RSA 264:15, IV.

■ The statute's location and the fact that an uninsured motorist is necessary to "trigger" coverage do not change this result. To accept the plaintiff's argument would require us to deviate from the plain meaning of the words of the statute, and move from an interpretation of the statute that leads to relatively logical, equitable results to one which allows double recovery. Indeed, the plaintiff admits that the result under his interpretation of the statute is anomalous, although he asserts that the anomaly is in the statute. We find no such anomaly, and therefore hold that Fidelity was entitled to set off against its liability for damages the amounts which the State of Washington and ITT-Rayonier, Inc. paid to the estate.

*Reversed.*

All concurred.