*Reversed and remanded.*

All concurred.

Hillsborough
No. 91-369

ANDRE BONTE f/n/f STEPHANIE BONTE

v.

AMERICAN GLOBAL INSURANCE COMPANY

December 29, 1992

*Law Office of Thomas Craig P.A.*, of Manchester (*Paul D. Parnass* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch P.A.*, of Manchester (*Andrew D. Dunn* on the brief and orally), for the defendant.

THAYER, J.   This case arises out of a collision in which an underinsured motorist struck Stephanie Bonte's mother while Stephanie was in utero, giving rise to an uninsured motorist coverage claim. On appeal, Stephanie, the plaintiff, contends that the Superior Court (*Dalianis*, J.) erred as a matter of law in determining that the defendant, American Global Insurance Company, may exercise contractual subrogation rights under an uninsured/underinsured motorist policy before the plaintiff has been fully compensated for her injuries. We reverse in part, vacate in part, and remand.

On June 10, 1988, Sharon Bonte, who was seven months pregnant with the plaintiff, had left her Manchester office and was crossing Elm Street to reach the employee parking lot when she was struck by a motorist, Catherine Shedd. As a result of the accident, the plaintiff was born prematurely the following day, and has been diagnosed as having cerebral palsy. At the time of the accident, the plaintiff's parents had uninsured motorist coverage under a combination home/automobile liability insurance policy (the policy) issued by American Global Insurance Company (Global). The policy provided for uninsured/underinsured motorist coverage in the amount of $500,000 for each of the Bontes' two vehicles. After intra-policy stacking, an insured within the policy would receive up to $1,000,000 in coverage. The plaintiff collected $100,000 from Catherine Shedd's liability insurer, which Global was allowed to claim as a credit. Then, pursuant to a settlement agreement with respect to the automobile portion of the policy, Global paid $850,000 in underinsured motorist benefits to the plaintiff, bringing her total recovery to $950,000. The plaintiff brought a negligence claim against her mother, seeking $300,000 un-

der the homeowner liability portion of the policy. In addition, the plaintiff has brought similar claims against the owner and the lessee of the premises where Sharon Bonte worked.

In the settlement agreement, the parties agreed to leave open the enforceability of a trust agreement provision in the policy. The trust agreement provides in relevant part:

> "In the event of payment to any person under this Part:
> (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made.
> (b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization . . . ."

This standard contractual provision parallels the statutory subrogation right conferred in the State financial responsibility law, RSA 264:15, IV.

In January 1991, the plaintiff, through Andre Bonte as her father and next friend, filed a declaratory judgment petition in superior court against Global. The plaintiff moved for summary judgment, asking the superior court to rule that Global cannot assert its contractual subrogation rights with respect to her potential recovery from other possible tortfeasors, such as her mother or any other responsible third parties, until after the plaintiff has been fully compensated for her injuries. Global concedes that the plaintiff's damages exceed one million dollars; therefore, her total recovery of $950,000 did not fully compensate her. The superior court denied the plaintiff's motion and dismissed her petition.

On appeal, we need discuss only one of the plaintiff's arguments, as it is dispositive. In its order denying the plaintiff's motion for summary judgment, the superior court acknowledged that there was no issue of material fact. The superior court then, however, dismissed the petition for declaratory relief on its interpretation of the policy language, holding that "[i]n light of the unambiguous policy language set forth [in the trust agreement], it is apparent that Global may exercise its subrogation rights in this instance." The plaintiff argues that Global cannot exercise its subrogation rights with respect to future recoveries against other negligent parties until she has been fully compensated for her injuries. Global contends that its

subrogation rights are governed by the unambiguous terms of the policy's trust agreement, without regard to whether the plaintiff has been fully compensated. Specifically, Global argues that the enforceability of its subrogation rights is a matter of contract with respect to the additional underinsured motorist coverage purchased in excess of $25,000 (the statutory minimum) or, in the alternative, in excess of the amount of liability coverage purchased by the Bontes if that is deemed the minimum statutory limit mandated by RSA 264:15, I. We find this argument unconvincing.

Our decision in this case is controlled by our prior holdings in *Raitt v. National Grange Mutual Insurance Co.*, 111 N.H. 397, 285 A.2d 799 (1971), and *Anderson v. Fidelity & Casualty Co. of N.Y.*, 134 N.H. 513, 594 A.2d 1293 (1991). We first interpreted the scope of the statutory subrogation right and an identical contractual provision in *Raitt*. We found that through RSA 264:15, IV, the legislature intended to grant carriers of uninsured/underinsured motorist coverage "a right of 'subrogation' only as to amounts recovered from the uninsured motorist." *Raitt*, 111 N.H. at 400, 285 A.2d at 802. We noted that the statute was not intended to allow carriers "to set off against the required uninsured motorist coverage" amounts recovered from any source responsible for the injury. *Id.* at 400, 285 A.2d at 802. Moreover, we stated that the subrogation rights under RSA 264:15, IV, and corresponding contractual provisions, must be restricted to cases where allowing the injured party to collect the full amount of uninsured motorist coverage would result in overlapping recovery. *Id.* at 401, 285 A.2d at 802. We added that unless the subrogation rights are so restricted, "the carrier obligated to furnish uninsured motorist coverage would be subsidized at the expense of its insured . . . without regard to the [insured's] *prior and complete indemnification.*" *Id.* (emphasis added); *see also Gay v. Preferred Risk Mutual Insurance Co.*, 114 N.H. 11, 15, 314 A.2d 644, 647 (1974). Therefore, in manifesting a concern for fully compensating the insured, we limited both the statutory and contractual subrogation rights of the carrier.

In *Anderson*, we considered whether an uninsured motorist coverage carrier may reduce payments made under such coverage by amounts an insured has recovered from non-motorist tortfeasors. *Anderson*, 134 N.H. at 514, 594 A.2d at 1294. We were careful to emphasize that the subrogation right, conferred by RSA 264:15, IV, applies only to the extent that amounts received represent an overlapping recovery. *See id.* at 517, 594 A.2d at 1295. The uninsured motorist carrier was entitled to setoff in *Anderson* because, based on

the determination of damages, the insured had been fully compensated for his injuries. *Id.* at 514, 594 A.2d at 1294. Therefore, the carrier's reduction of payment under uninsured motorist coverage prevented overlapping recovery. *Id.* at 519, 594 A.2d at 1297.

In the present case, if Global were allowed to exercise subrogation rights with respect to any recovery that the plaintiff might receive from her mother and other alleged non-motorist tortfeasors, then Global would effectively reduce its own liability under the coverage terms without regard to the insured's full compensation. *See Raitt*, 111 N.H. at 401, 285 A.2d at 802 (subrogation restricted to instances when amounts recovered from other tortfeasors create overlapping recovery). *See generally* 2 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 19.6, at 129 (2d ed. 1990) (insurer should not be allowed to reduce its liability by exercising subrogation rights when insured is not fully compensated). Global and the plaintiff reached a settlement by which Global paid $850,000, an amount less than the policy limits and, more importantly, less than the plaintiff's estimated damages. The settlement, therefore, cannot be said to have made the plaintiff whole. *See* A. WINDT, INSURANCE CLAIMS AND DISPUTES § 10.06, at 535 (2d ed. 1988) (insured should not be considered "fully compensated" merely because insured entered into settlement agreement). Until the plaintiff is deemed fully compensated, there is no argument that overlapping recovery has occurred.

■   A carrier's subrogation rights against joint tortfeasors other than the uninsured motorist tortfeasor should be triggered only after the injured insured has been fully compensated for injuries sustained in the accident. R. MCNAMARA, 9 NEW HAMPSHIRE PRACTICE, PERSONAL INJURY § 588, at 152 (1984). The insured's recovery, however, may not exceed the insured's actual damages. *See Anderson*, 134 N.H. at 517, 594 A.2d at 1295. To allow otherwise would permit an overlapping recovery. In the present case, we lack a precise calculation of the plaintiff's damages; therefore, we are unable to determine the point at which the plaintiff may receive overlapping recovery with respect to the potential recoveries she seeks. Since the parties stipulated that the plaintiff's damages exceed one million dollars, the plaintiff has not yet been fully compensated. Thus, the plaintiff may recover some amount from non-motorist tortfeasors without triggering Global's subrogation rights.

■   Accordingly, we hold that the superior court erred as a matter of law in dismissing the plaintiff's petition for declaratory judg-

ment. We vacate the superior court's order denying the plaintiff's motion for summary judgment and remand for further proceedings in accordance with this opinion.

*Reversed in part; vacated in part; and remanded.*

All concurred.